CHICAGO, BURLINGTON & QUINCY R. CO., APPELLANT, v. O. C. EVANS, ETC., RESPONDENT.*

Kansas City Court of Appeals. July 6, 1926.

*Corpus Juris-Cyc References: Appeal and Error, 4CJ, p. 999, n. 22; Carriers, 10CJ, p. 445, n. 15; p. 446, n. 25, 26, 31; p. 447, n. 38; Judgments, 34CJ, p. 1043, n. 14.

*Langworthy, Spencer & Terrell* for appellant.

*Lebrecht & Leacy* for respondent.

ARNOLD, J.—This is an action in three counts against the consignee to recover freight charges upon three carloads of potatoes transported by plaintiff and its connecting carriers.

The facts shown are that plaintiff is a common carrier and defendant O. C. Evans is the surviving partner of O. C. Evans & Company, dealers in farm products. It appeared at the trial that Peppers of the consignee firm had died since the suit was filed and the cause was continued against defendant Evans as surviving partner. About May 25, 1913, by written correspondence consisting partly of letters and partly of telegrams, one Asbury of Williston, N. Dak., a dealer in farm products agreed to sell and defendants agreed to buy five carloads of potatoes of certain grade and description f. o. b. Williston, to be shipped to defendant at Kansas City, Mo., on a straight bill of lading. The loading and billing were performed by the seller

or his agents at Williston, the Asbury Grocery Co. being named as consignors and O. C. Evans & Co., Kansas City, Mo., consignee, freight charges guaranteed by seller.

Two of the cars in the order for five were accepted by the consignee, but on arrival at Kansas City, the other three cars were rejected on the ground that the requirements of the contract of purchase were not fulfilled. The potatoes contained in the three cars rejected ultimately were sold by the carrier for freight charges. It appears that Asbury sued O. C. Evans & Co. for the purchase price of the five cars of potatoes and recovered judgment for the full purchase price and the judgment was affirmed by this court. [Asbury v. Evans & Co., 182 S. W. 785.]

The petition in the instant case is in three counts, each of which alleges the shipment of a car of potatoes, and the facts relative thereto; and each count prays judgment for the transportation charges thereon, and certain specified charges for car service in Kansas City, Mo. Each count alleges that defendants were the owners of the potatoes from the time they were delivered to the initial carrier at Williston, N. Dak., to-wit, the Great Northern Railway Company; that plaintiff demanded payment of defendant of the transportation and demurrage charges, but that defendant has refused to pay the same; that on June 7, 1917, plaintiff filed suit in the circuit court of Jackson county, Mo., on the same cause of action and thereafter, on July 12, 1919, plaintiff suffered a dismissal or involuntary nonsuit, which was appealed to this court, resulting in an affirmance of said judgment; that the present action was commenced within one year after said judgment of dismissal or nonsuit, as provided by section 1329, Revised Statutes 1919.

The petition alleges that V. R. Asbury, vendor of said shipment of potatoes, sued vendee Evans & Co. for value of said judgment in the circuit court of Jackson county, Mo., and recovered thereon; that Evans & Co. appealed from said judgment to the Kansas City Court of Appeals, where the judgment was affirmed; that the decision therein determined (1) that there was a binding contract between vendor and vendee, whereby vendor agreed to deliver and vendee agreed to accept said potatoes at twenty-five cent per bushel f. o. b. Williston, N. Dak., for shipment to the vendee at Kansas City, Mo.; (2) that vendor delivered said potatoes to the carrier at Williston, N. Dak., in accordance with the terms of said contract; that by reason of the said determination of the facts as aforesaid, the same has become *res adjudicata* between vendor and vendee; that plaintiff in this suit is in privity with the vendor aforesaid, and that said questions of fact determined and said adjudication in said suit are conclusive in the present action.

The answer is a general denial as to each of the three counts of the petition. Upon the pleadings thus made the cause went to trial to the court, a jury being waived, and at the close of all the evidence the court gave the following declaration of law:

"At the close of the entire case the court declares the law to be that under the pleadings and the evidence judgment must be for the defendant."

Judgment for defendant was entered accordingly. A motion for a new trial was ineffectual and plaintiff has appealed.

The evidence submitted by plaintiff showed that the potatoes were transported upon a straight bill of lading from Williston, N. Dak., to Kansas City, Mo., and that defendant refused to accept same; that the charges sued for in each count were the correct charges under the tariff schedules on file with the Interstate Commerce Commission, at the time of the shipment, and that the amount prayed for in each count was unpaid; that defendant was entitled to a set-off for the sum realized by plaintiff from the sale of the potatoes. Plaintiff showed the filing of the original suit to recover the transportation charges; timely filing of this suit; the exchange of telegrams between vendor and vendee constituting the contract of sale between them; showed the petition and answer in the suit of Asbury v. Evans & Co., to recover the purchase price of the potatoes, the verdict and judgment below, the opinion proper, and the opinion on motion for rehearing in this court.

Asbury testified in a deposition in behalf of plaintiff that the cars were loaded in the customary manner and that there were no sprouted or wilted potatoes in the shipment and that they were properly loaded. Plaintiff introduced and identified letters and telegrams passing between Asbury and defendants herein. These telegrams are as follows:

"Kansas City, Mo., 20-13

"Asbury Groc. Co., Williston, N. D.

Quote best price few cars potatoes name variety quick shipment. 8:19 p. m.                    "C. Evans and Co."

"May 21, 1913

"To O. C. Evans,
Kansas City, Mo.          9:45 p. m.
"Name price f. o. b. Williston can furnish Ohio, White, Red, Burbank, Cobblers, Triumphs, Mx Table. Can furnish at your own price if not too low. Ans.

"Asbury Gro. Co."

"Asbury Groc. Co.
"Williston, N. D.
"Wire received will honor your draft twenty-five cents per bushel five cars good clean potatoes this week shipment if possible do not

want wilted or sprouted stock if you can give us mostly whites and good quality can possibly use ten cars. Answer.

"O. C. EVANS & Co., 3:45 p. m."

Subsequent telegrams introduced are not material herein.

Defendant testifying in his own behalf stated that he rejected the potatoes because the cars were overloaded and the potatoes bad and the varieties mixed all through the car; and because they were shipped later than the week specified. Defendant also identified and introduced in evidence a letter, over the objection of plaintiff, which had been given him by one T. W. Newell, plaintiff's general freight auditor. This letter was addressed to V. R. Asbury and demanded at the hands of Asbury the payment of the freight charges now in litigation. The letter, insofar as material herein, reads as follows:

"We have had considerable correspondence with you in reference to paying these deficits, and on Jan. 28, 1916, you advise us that you had secured judgment against O. C. Evans & Company, and again on March 13, 1916, you advised that you had received settlement from O. C. Evans & Company for the potatoes and requested that we make collection of the freight charges still from that firm.

"On receipt of this letter we referred the matter to our legal department and we are advised that inasmuch as O. C. Evans & Company did not accept delivery of these shipments, we cannot hold them for the payment of the freight charges, but must look to you for payment of the same.

"In view of these circumstances I must again request that you favor this company with your check for the $824.67, and in remitting make the same payable to Mr. W. J. Fabian, cashier of the C. B. & Q. R. R., 547 W. Jackson Blvd., Chicago, Illinois, mailing check direct to him, being careful to attach the enclosed slip to your remittance.

"This will answer your letter of April 12th, 1916, received under personal cover.

"Yours truly,
"J. W. NEWELL."

In support of this appeal it is contended that where a consignee contracts for goods of a certain specified quality and agrees to buy them f. o. b. at point of origin, he thereby appoints the vendor thereof his agent to select the carrier and make the contract for transportation, that title passes at the point of loading, so that during the transportation the goods belong to the consignee, and being owned by him and shipped according to directions, he is liable for the freight charges; that therefore the court erred in giving defendant's declaration of law above quoted and in refusing defendant's requested declaration as follows:

"The court declares the law to be that under the pleadings and evidence of this case, its finding and judgment must be for the plaintiff upon each of the counts of the petition."

It is urged that the consignor is primarily liable for the freight charges. We think there is no question as to the correctness of this position; also that plaintiff's contention that the consignee who accepts freight is liable for the charges, is correct, providing, of course, the contract between the parties so provides. Plaintiff also urges the plain proposition of law that the consignee who is the owner of the goods and has directed the transportation is liable for the freight charges. We do not understand that defendant denies these rules of law, but that his insistence is that he was not a party to the contract of shipment, express or implied, and therefore, that he is not liable for the freight charges. This is the only point in issue, and upon its solution this appeal hinges. In our opinion in the case of C. B. & Q. R. R. Co. v. Evans, 228 S. W. 853-4, we say:

"The carrier's contract and right to recover its freight cannot be made to depend upon what may be the legal effect of the mere relationship of consignor and consignee, and ownership of the property shipped is not the test of liability to the carrier for freight charges. (Citing cases). There is nothing to assist plaintiff in the case of Yazoo & M. V. R. Co. v. Zemurray, 238 Fed. 789, 151 C. C. A. 639. In that case the consignee who was the owner of the goods, received the same, and the question was as to whether the carrier, after collecting from the consignee a portion of the freight, could sue the consignor for the balance."

It has been held repeatedly that the mere existence of the relationship of carrier and consignee creates no liability on the part of the consignee to pay the freight charges. Neither is the ownership of the property a test of liability for freight charges. There must be an agreement by the consignee, express or implied, to fasten upon him such legal liability. The general rule is laid down in 10 C. J., pp. 445-6:

"There is no contractual relation between the carrier and the consignee by the mere designation of the latter as consignee which obligates him to receive the goods or to pay the freight charges, and he is not liable therefor in the absence of an agreement express or implied."

[See, also, 3 Michie on Carriers, sec. 1548.] A case directly in point is Union Pacific R. R. Co. v. Smelting & Ref. Co., 202 Fed. 720, 722, where it is said:

"In every case of this character, in which there is no express contract by the consignee to pay the transportation charges, the question is whether or not the facts of the case raise the implication of

such a contract. The law is well settled that such a contract is implied from the acceptance by a consignee or consignees of goods shipped under a bill of lading which contains the stipulation, the consignee or consignees paying freight, or any similar provision. . . . But this reason exists in all its force, in the absence of a bill of lading, wherever the consignee accepts the goods knowing that the carrier looks to him for payment, waives his lien, and delivers the goods in the faith that he will pay the charges."

In point also is the Missouri case of Railroad v. Lead Co. (Mo. App.), 190 S. W. 387, where it is said:

"The result in this case must be reached with reference to the liabilities imposed on the defendant by the bill of lading. The decided weight of the authorities is to the effect that the shipper is primarily liable under a bill of the character here involved. The consignee also becomes liable in a case of this kind when he accepts the shipment and, as here, pays a portion of the freight."

It is clearly the rule that a consignee is liable for the freight charges when he accepts the shipment, or, expressly or impliedly contracts to do so. It is plaintiff's contention that the goods herein having been contracted f. o. b. Williston, Asbury became defendant's agent in contracting for the shipment. We are not impressed with this argument and plaintiff's citations do not sustain its position. Under the rule above cited, it must be held that in the absence of a contract that the consignee shall pay the freight charges, he is not legally bound to do so. In the case at bar, the bill of lading conclusively shows that the contract of shipment was made by plaintiff with the consignor, and the trial court was justified in so holding; and further, the court was justified in holding that under the contract of purchase between Asbury and defendant, the title to the potatoes did not pass to defendant until the shipment was accepted by him. In this holding, we are not unmindful of the fact that in the suit to recover the price of the shipment Asbury prevailed over defendant, for such a decision could not establish any contractual relation between plaintiff and defendant herein as to the transportation charges.

It is urged the trial court erred in admitting in evidence a copy of the letter dated April 16, 1916, addressed to Asbury by one J. D. Newell, chief auditor of plaintiff. The following occurred as to the admission of this evidence:

"MR. KASPAR (counsel for defendant): We offer this in evidence.

"MR. LANGWORTHY (for plaintiff): I don't know what the purpose is.

"MR. KASPAR: The purpose is that the Burlington Railroad Company themselves recognized the fact that the consignee was not liable legally for the freight charges but that Mr. Asbury was the man to whom they should look.

"MR. LANGWORTHY: If that is the purpose of the offer, I object to it, first, because Mr. Newell would not have the authority and did not have the authority to determine the question as to who was or who was not liable for freight charges and any statements or admissions that they may have made in that regard would not be binding upon the company, and, second, it is wholly immaterial what efforts the company may have made to collect the freight charges from Asbury because that does not in any way relieve the defendant O. C. Evans, or the O. C. Evans & Co. partnership from liability for freight charges if, as we contend, they are liable.

"THE COURT: Is that all the purpose you have, or does it throw any light on the general transaction?

"MR. KASPAR: It shows that they were looking to Mr. Asbury under their contract for the collection of the freight charges. They presented a claim to him and were endeavoring to collect it from him on the theory that he was the one who was legally liable.

"THE COURT: It is not binding on the plaintiff, is it?

"MR. KASPAR: It just goes to the question of how they looked at the transaction.

"THE COURT: Objection overruled."

We would not be justified in reversing the case on account of the admission of this evidence, as the cause was tried to the court. This situation was covered in the cases of Cornice & Roofing Co. v. Trust Co., 145 Mo. App. 36, 56, 57; Patton v. Thomas, 212 Mo. App. 367.

We find no reversible error of record. The judgment is affirmed. *Bland, J.,* concurs; *Trimble, P. J.,* absent.