**GRAF BROS., INC.**

v.

**D & E REALTY CO., Inc.**

Supreme Judicial Court of Maine.

Aug. 9, 1968.

Thomas Schulten, Portland, for appellant.

John G. Marshall, Lewiston, for appellee.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN and WEATHERBEE, JJ.

WILLIAMSON, Chief Justice.

This is an action by a common carrier to recover freight on two truckloads of structural steel from Houston, Texas to Portland, Maine. The decisive question is whether the defendant was the undisclosed principal of the consignee to whom the steel was delivered in Portland. The plaintiff has appealed from judgment for the defendant.

The steel was shipped from Houston by Mes-Tex Steel Bldg., Inc. on a Uniform Straight Bill of Lading consigned to "NESBC" (New England Steel Building Co., Inc.), Box 12, Chelmsford, Massachusetts with destination "Portland" and with route "Sea Train." The Bill contained a notation "Deliver to: D & E Realty, Warren Ave., Portland, Maine; call collect, A.C. 617 256-9471, Chelmsford, Mass." The telephone number and the Chelmsford address were those of NESBC.

The shipment was accepted by the carrier without recourse on the consignor, with the provision, over the signature of the consignor by its agent, that "the carrier shall not make delivery of this shipment without payment of freight and all other lawful charges." The steel went via "Sea Train" to New Jersey and thence by connecting motor common carriers, the New England Transportation Co., and finally the plaintiff, Graf Bros., Inc. to Portland.

In Portland the defendant, D & E Realty Co., Inc., stopped the attempt of the plaintiff to unload the steel at the defendant's Warren Avenue premises. The plaintiff then communicated with the representative of NESBC and with the consent of the defendant delivered the steel to NESBC, the consignee, which accepted delivery at the same premises. To quote

from Graf's reply brief, "plaintiff did not deliver or attempt to deliver to defendant." The plaintiff has not been successful in recovering the freight from NESBC, now in bankruptcy.

The Court, sitting without a jury, in entering judgment for the defendant, said: "I find no evidence to support any contract, express or implied, whereby the Defendant agreed to pay the express charges of the Plaintiff here sought to be recovered." We agree.

On its face the situation discloses: (1) a shipment of steel in Houston by a consignor without recourse for the freight; (2) delivery to and acceptance in Portland by the original consignee, which thereby became liable for the freight; and (3) credit for the freight given to the consignee by the carrier, which thereby of its own will waived its lien for payment before delivery. There is nothing on the surface to indicate that the defendant has any responsibility for the charges. The plaintiff reaches beneath the transactions, so stated, to place liability on the defendant.

The bill of lading did not accompany the steel to Portland. Both motor carriers held waybills for the shipment. The plaintiff was unaware, it says, that the shipment was sent freight collect with denial of recourse against the consignor.

It is not clear what advantage the plaintiff seeks from its lack of knowledge of the terms of the bill of lading. In any event, it gains none. Surely the plaintiff, a common carrier, had opportunity of ascertaining the exclusion of the consignor from liability. It preferred, without inquiry it would appear, to carry and deliver the steel with payment resting only on the credit of the consignee. No more is heard of the consignor in Texas.

The claim that the defendant was the undisclosed principal of the consignee NESBC, rests on substantially the following situation appearing from the record.

On September 9, 1965, NESBC and the defendant entered into a contract whereby NESBC agreed to build a terminal for the defendant on the latter's premises on Warren Avenue in Portland. The contract called for a "turn key job," meaning that NESBC agreed to erect a completed building ready for defendant's occupancy. The contract price of the completed building was $76,800, with the steel to be shipped "F.O.B. Houston."

The parties agreed that freight from Houston would be borne by the defendant and added to the contract price. It was then understood that the shipment from Texas would be made by a carrier in which the defendant was interested. In November 1965 NESBC and the defendant altered the agreement to the end that the shipment would be made by "Sea Train" from Houston to New Jersey and there "picked up" by the defendant. For reasons not disclosed, the shipping instructions did not include the change in routing.

The steel unexpectedly and without notice reached Portland on the plaintiff's trucks. During the delay in the unloading and before the defendant permitted delivery to NESBC at Warren Avenue, the parties again altered their agreement by providing that NESBC and not the defendant would pay the freight. At no time did the plaintiff, or the other carriers, know or have reason to know of the agreement or the changes therein between NESBC and the defendant relating to payment of freight.

On December 9, 1965, in a letter addressed "To Whom It May Concern:" NESBC acknowledged receipt of $10,000 paid on behalf of the defendant by a bank "on account of steel and material for a steel terminal building on land at Warren Avenue, Portland, Maine. This payment is made on account of a written construction agreement between D & E Realty, Inc. and the undersigned. In return for this payment the undersigned transfers to D & E Realty, Inc. all of its right, title, and interest in said steel and materials." There were also additional payments for the same purpose by the defendant to NESBC of

about $5,000, making a total of about $15,000.

In our view, the defendant in advancing money on the contract did no more than take normal protective steps by obtaining or attempting to obtain the security of the steel to be purchased by NESBC for the proposed building.

It further appeared that the defendant hired the subcontractor to complete construction of the building site, although this work was included within the NESBC contract. The plaintiff argues that this fact bears upon the asserted agency of NESBC.

At most, the record establishes that NESBC's ability to complete the contract was in some doubt when the steel was delivered. The evidence, however, does not deny, as we read it, that NESBC was then acting under the contract and was an independent contractor. The step from contractor to agent for an undisclosed principal had not been taken.

The case, in our opinion, falls within the principle set forth in Brown Transport Corp. v. United Merchants & Mfrs., 21 A. D.2d 303, 250 N.Y.S.2d 440 (1964). In holding there was no liability for freight on the owner, the Court said, at p. 440:

"The question presented is whether a common carrier by motor vehicle has a cause of action for freight charges against the owner of the goods transported even though the owner had no contract or dealings with the carrier, was neither consignor nor consignee of the shipment, and the goods were not at any time diverted or reconsigned * *

"* * * Defendant owner played no part whatever in making the arrangements. It made no agreements with any carrier, delivered none of the machinery, received none of the machinery, exercised no control over the shipment, and it did not sign or receive any bill of lading with respect to the shipment.

"The machinery was shipped to Griffin as consignee on a collect basis. Never-

theless, plaintiff carrier delivered the machinery to Griffin at Savannah, Georgia, without first collecting the freight charges. It has collected $514.25 from Griffin, which became insolvent, and seeks the unpaid balance of $4,046.42 in this action.

"There is no contractual relation between plaintiff carrier and defendant owner. Under such circumstances, cases decided before addition of section 323 to the Interstate Commerce Act in 1935 stated that the owner was not liable (see American Ry. Ex. Co. v. Mohawk Dairy Co., 250 Mass. 1, 9, 144 N.E. 721, 724 [1924]; C. B. & Q. R. Co. v. Evans, etc., 221 Mo.App. 757, 762, 288 S.W. 73, 75 [1926]; Central of Georgia Rwy. Co. v. Lovell, 111 Misc. 735, 737, 180 N.Y.S. 922, 923 [Mun.Ct. of City of N.Y. 1919]). There appear to be no cases in point since the section was added. Plaintiff has cited no authority imposing liability on an owner of shipped goods merely because it is owner."

See also 13 Am.Jur.2d Carriers § 471 et seq.; 13 C.J.S. Carriers § 316 et seq; 49 U.S.C.A. § 323, n. 5; 49 U.S.C.A. § 3(2), n. 4.

The principle is equally applicable to the freight from Houston to Portland whether by "Sea Train" or motor carrier.

Eazor Express, Inc. v. Perlmutter, 22 A.D.2d 49, 253 N.Y.S.2d 360 (1964) cited by the plaintiff, and holding an owner liable for freight, is distinguishable from the case at bar. There the defendant ordered steel from the Steel Company and directed that it be shipped to designated job sites "freight collect." When accepted for delivery, the Steel Company had been paid and was acting as shipper at the direction of the owner.

The owner contended unsuccessfully that after becoming owner on payment for the steel, he exercised no acts of ownership imposing liability for freight. Eazor is the case of carrier against principal of the agent shipper; our case is carrier against

asserted undisclosed principal of agent consignee. The defendant here had no contact whatsoever with the shipper relating to terms of the shipment. Whether the shipper was here agent for NESBC, we need not determine. Our problem is only whether NESBC was agent for the defendant.

We return to *Brown*. The defendant had no contract or dealings with "Sea Train" or any carrier. It was neither consignor nor consignee of the shipment. The steel was not diverted nor reconsigned. The agreement between NESBC and defendant for routing by carriers preferred by defendant and for payment of freight between themselves did not alter or enlarge liability of the defendant to the plaintiff carrier. The relationship between NESBC and the defendant was not thereby transformed from that of independent contractor to undisclosed principal and agent.

The entry will be

Appeal denied.

DUFRESNE, J., did not sit.