Melba I. NEIDLINGER, Appellant,

v.

Jerry Lynn NEIDLINGER, Appellee.

No. 1999–SC–0662–DG.

Supreme Court of Kentucky.

Aug. 23, 2001.

**516**

Bonnie M. Brown, Louisville, for appellant.

Delores H. Pregliasco, Vicki L. Buba, Louisville, for appellee.

## OPINION OF THE COURT

COOPER, Justice.

Melba and Jerry Neidlinger were married in Hawaii in 1976. The husband, Appellee, is a dentist. The wife, Appellant, has an associate degree in health education from San Francisco City College and had been employed by another dentist during the five years preceding the marriage. Appellant then worked full-time in Appellee's dental practice until 1982 when the parties adopted their only child, Jessica, born on August 6, 1982. Thereafter, Appellant continued to work part-time. In 1984, the family moved from Hawaii to Danville, Kentucky, where Appellee opened another dental practice. The practice was not as successful as the parties had anticipated and, in 1989, Appellee decided to obtain a second dental degree to enhance his marketability. While attending school in Chicago, Appellee also taught and worked part-time, and commuted to Danville on weekends where he continued to treat some of his Danville patients. During this period, Appellant used money from the dental office account to purchase a $10,000.00 certificate of deposit.

In 1991, Appellee completed his second degree and accepted employment with the Veterans Administration in Little Rock, Arkansas. Appellant remained in Danville. In 1992, Appellee accepted another position in Charleston, South Carolina. Appellant again declined to accompany Appellee to his new place of employment and the parties agreed to separate. Appellant moved from the marital residence in Danville to a rental apartment in Louisville, Kentucky, so that she could pursue a degree in interior design. She enrolled Jessica in a private school at a tuition cost of $7,200.00 per year (later $8,000.00 per year). In August 1992, the parties sold the Danville dental practice for $93,000.00. Much of this sum was used to pay debts; however, Appellant used $25,000.00 of the proceeds to purchase another certificate of deposit. From August 1992 until November 1993, Appellee sent Appellant $3,600.00 per month for spousal maintenance and child support. He also paid $1,500.00 per month on the mortgage and utility bills for the Danville residence and $798.00 per month on the parties' credit card debts. However, he objected to Jessica's continued enrollment in the private school and refused to pay the cost of tuition. The trial judge ultimately found that Appellee's gross income was $83,000.00 per year.

In March 1993, Appellant filed this action in the Jefferson Circuit Court for a decree of legal separation (later amended to seek a decree of divorce). In January 1994, Appellee reduced his voluntary maintenance and support payments to $700.00 per month. Following a *pendente lite* hearing before a domestic relations commissioner, Appellee was ordered to pay Appellant $700.00 per month in spousal maintenance and $798.00 per month in child support, retroactive to August 1994. During the pendency of the action, Appellant cashed and spent the $35,000.00 certif-

icates of deposit and spent another $26,000.00 which she had borrowed from her mother and two friends.

The litigation was bifurcated into two phases, the first addressing issues of property division and spousal maintenance and the second addressing issues of custody, visitation, and child support. The first phase was tried on July 5 and October 23, 1995. A November 2, 1995 judgment entered a decree of divorce, assigned the parties' property and debts, and awarded Appellant $400.00 per month spousal maintenance for a period of three years. (By this time, Appellant, though unemployed, had acquired both a degree in interior design and a real estate license.) With respect to the $26,000.00 owed to Appellant's mother and two friends, the judgment recited:

> Mrs. Neidlinger incurred significant debt for living expenses and for her unilateral decision regarding schooling for Jessica post-separation. The Court concludes that she was the beneficiary of most of the debt and shall be responsible for payment of those "loans."

Appellant was represented by an attorney during the first phase of the litigation. With respect to attorney's fees, the judgment stated as follows:

> The law authorizes an award of costs and attorney's fees when there is an imbalance in the financial resources of the parties. KRS 403.220. This Court, however, has no information regarding attorney's fees. Therefore, Petitioner's counsel ... shall tender the appropriate affidavit to this Court. Judgment concerning an award is reserved.

Each party filed a motion to alter, amend or vacate the November 2, 1995 judgment. CR 59.05. Appellant's counsel also filed a sixty-one page affidavit detailing costs and fees totaling $9,741.70 incurred by Appellant through November 30, 1995 and moved the court to require Appellee to pay Appellant that sum. Prior to the scheduled hearing on the post-judgment motions, Appellant discharged her attorney. Several days later, she filed a written motion to require Appellee to advance to her an unspecified sum of money to enable her to retain new counsel for the custody phase of the litigation. On April 4, 1996, an order was entered adjudicating all pending post-judgment motions, including Appellant's motions for attorney's fees, both of which were overruled. Appellant represented herself during the custody phase of the litigation. Following a trial of those issues, a second judgment was entered on August 21, 1996 awarding Appellee custody of then fifteen-year-old Jessica, subject to Appellant's visitation rights, and ordering Appellant to pay child support.

Every order entered by the trial judge was designated as "final and appealable." As a result, four separate appeals were filed in this case, all of which were ultimately consolidated into one. On June 18, 1999, the Court of Appeals reversed the spousal maintenance award and remanded that issue to the family court with directions to enter an increased award. In all other respects, the judgments were affirmed. Appellee did not seek further review of the maintenance issue. Appellant, however, sought and obtained discretionary review of three issues: (1) failure to require Appellee to reimburse her for attorney's fees incurred during the first phase of the litigation; (2) failure to require Appellee to advance attorney's fees to her to enable her to retain counsel for the second phase of the litigation; and (3) assignment to her of the $26,000.00 debt owed to her mother and two friends.

## I. INCURRED ATTORNEY'S FEES.

The Court of Appeals concluded that the failure to order Appellee to pay the attor-

ney's fees already incurred was unpreserved for appellate review because Appellant did not name her attorney as a party to the appeal, citing *Carter v. Carter,* Ky., 382 S.W.2d 400, 402 (1964). *Carter,* as well as the other cases cited for this proposition in Appellee's brief, *i.e., Tyler v. Bryant,* Ky., 394 S.W.2d 454, 455 (1965), *McDowell v. McDowell,* Ky., 378 S.W.2d 814, 816 (1964) and *Patterson v. Patterson,* Ky., 266 S.W.2d 91, 93 (1954), were all decided under former KRS 453.120, which provided:

> In actions for alimony or divorce, the husband shall pay the costs of each party, unless it appears in the action that the wife is in fault and has ample estate to pay the costs.

In each of the cited cases, an attorney's fee was awarded and was contested on appeal. In *Tyler, McDowell* and *Patterson,* the husband sought to contest the fee awarded to the wife's attorney. In *Carter,* the wife sought to contest the awarded fee as inadequate. In each case, the attorney had a vested interest in the outcome, thus was a necessary party to the appeal. KRS 453.120 was repealed[1] concomitantly with the 1972 enactment[2] of the new Kentucky dissolution of marriage act, which was modeled on the Uniform Marriage and Divorce Act promulgated in 1970 by the National Conference of Commissioners on Uniform State Laws. KRS 403.220 was adopted verbatim from Section 313 of the Uniform Act.[3] It provides:

> The court from time to time after considering the financial resources of both parties *may* order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and

for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment. The court may order that the amount be paid directly to the attorney, who may enforce the order in his name. (Emphasis added.)

■ Appellant's motion for attorney's fees already incurred did not request that the fees be paid directly to Appellant's former attorney (apparently Appellant had already paid his fee); thus, the motion was that Appellant be reimbursed for the fees she incurred. Under that circumstance, Appellant's former attorney was not an indispensable party to this appeal.

In *Tyler v. Bryant, supra,* our predecessor Court held that an attorney was an indispensable party to an appeal from an award of an attorney's fee under KRS 453.120 whether the fee was awarded to the wife or whether it was awarded directly to the attorney. *Wilhelm v. Wilhelm,* Ky., 504 S.W.2d 699 (1973), held that there was "no reason why this rule should not continue to apply in marriage-dissolution cases under KRS 403.220." *Id.* at 701. Upon reconsideration, however, we discern a substantial distinction between awards under former KRS 453.120 and awards under KRS 403.220. Under KRS 453.120, the husband was the principal obligor of the wife's attorney's fee and that was true whether the fee was ordered paid to the wife or directly to the attorney. Unless the wife was "in fault" in causing the divorce *and* had a substantial estate of her own, the husband was the primary (if not only) source from which the wife's attorney would be paid. The trial judge simply set the amount of the fee and ordered the

---

1.  1972 Ky.Acts, ch. 182, § 29.

2.  1972 Ky.Acts, ch. 182, §§ 1–28.

3.  9A *Uniform Laws Annotated,* Uniform Marriage and Divorce Act § 313, at 450 (West 1987).

husband to pay. Under that circumstance, the real parties in interest to a dispute over the fee were the husband and the wife's attorney, and an appellate court was held to be without personal jurisdiction to review the issue unless the attorney was a party to the appeal. *Patterson v. Patterson, supra,* at 93; *King v. King,* 214 Ky. 171, 283 S.W. 73, 74 (1926); *Bartlett v. Louisville Trust Co.,* 212 Ky. 13, 277 S.W. 250, 254 (1925).

Under KRS 403.220, the trial judge does not set either party's attorney's fee, but "from time to time . . . may order a party to pay a reasonable amount . . . for attorney's fees." If the "reasonable amount" is ordered paid directly to the attorney, the attorney "may enforce the order in his own name" and, thus, is the real party in interest and a necessary and indispensable party to any appeal from that order. But if the "reasonable amount" (which may be less than the actual fee agreed to between attorney and client) is ordered paid to the client, the client remains the primary obligor of the fee, thus is the real party in interest with respect to an appeal from the order. We have so held in several recent non-divorce cases. *Motorists Mut. Ins. Co. v. Glass,* Ky., 996 S.W.2d 437, 455 (1997); *Knott v. Crown Colony Farm, Inc.,* Ky., 865 S.W.2d 326, 331 (1993); *Louisville Label, Inc. v. Hildesheim,* Ky., 843 S.W.2d 321, 326 (1992). *Louisville Label, supra,* specifically held that unless the fee is awarded directly to the attorney, the client, as the primary obligor of the fee, is the real party in interest and the only indispensable party to the appeal. *Id.* at 326. The logic of this principle applies as well to fees awarded only to the client under KRS 403.220. To the extent that *Wilhelm v. Wilhelm, supra,* holds otherwise, it is overruled.

Furthermore, this appeal is not from an order awarding an attorney's fee,

but from an order denying a motion to reimburse a litigant for an attorney's fee already paid. Under that circumstance, Appellant's former attorney has no interest in the outcome, thus could not be an indispensable party to the appeal. Nevertheless, we affirm the result reached by the Court of Appeals on this issue.

KRS 403.220 authorizes a trial court to order one party to a divorce action to pay a "reasonable amount" for the attorney's fees of the other party, but only if there exists a disparity in the relative financial resources of the parties in favor of the payor. *Sullivan v. Levin,* Ky., 555 S.W.2d 261, 263 (1977), *overruled on other grounds, Hale v. Hale,* Ky., 772 S.W.2d 628 (1989); *Lampton v. Lampton,* Ky. App., 721 S.W.2d 736, 739 (1986). But even if a disparity exists, whether to make such an assignment and, if so, the amount to be assigned is within the discretion of the trial judge. *Wilhoit v. Wilhoit,* Ky., 521 S.W.2d 512, 514 (1975); *Russell v. Russell,* Ky.App., 605 S.W.2d 33, 37 (1980), *cert. denied,* 453 U.S. 922, 101 S.Ct. 3158, 69 L.Ed.2d 1004 (1981); *Beaver v. Beaver,* Ky.App., 551 S.W.2d 23, 25 (1977). "There is nothing mandatory about it." *Moss v. Moss,* Ky.App., 639 S.W.2d 370, 373 (1982); *see also Underwood v. Underwood,* Ky. App., 836 S.W.2d 439, 444 (1992). In *Wilhoit, supra,* we affirmed a trial judge's refusal to assign the wife's attorney's fees to the husband.

If there had ever been any doubt regarding the discretionary authority of the trial court to allocate court costs and award an attorney's fee, KRS 403.220 laid that doubt to rest once and for all. As matters now stand, an allocation of court costs and an award of an attorney's fee are entirely within the discretion of the court.

*Id.* at 514.

The family court's order denying Appellant's motion to require Appellee to

pay her attorney's fee does not state the reason for the denial. Perhaps the family court judge concluded that Appellant had unnecessarily dissipated marital resources by expending child support and spousal maintenance payments to rent an apartment while the marital residence remained unoccupied, though heavily mortgaged, and by continuing to enroll the parties' child in an expensive private school over Appellee's objection. Perhaps he believed that a portion of the $35,000.00 certificates of deposit that otherwise would have been divisible as marital property had been expended to pay Appellant's attorney's fee. Perhaps he believed that Appellant could have afforded to pay her own attorney's fee had she chosen to be employed during the course of this litigation. Or perhaps he believed that Appellee's payment of $3,600.00 per month in voluntary maintenance and support prior to and during the early stages of this action provided sufficient financial resources for Appellant to pay her own attorney's fee. *Drake v. Drake*, Ky.App., 721 S.W.2d 728 (1986).

The amount of an award of attorney's fees is committed to the sound discretion of the trial court with good reason. That court is in the best position to observe conduct and tactics which waste the court's and attorneys' time and must be given wide latitude to sanction or discourage such conduct.

*Gentry v. Gentry*, Ky., 798 S.W.2d 928, 938 (1990). Under the facts of this case, the family court judge's denial of Appellant's motion for reimbursement of attorney's fees was not an abuse of discretion.

## II. PROSPECTIVE ATTORNEY FEES.

In affirming the trial judge's denial of Appellant's motion for an advance of prospective attorney's fees, the Court of Appeals held (1) a trial judge is not authorized under KRS 403.220 to order one party to advance a sum to the other party for prospective attorney's fees, and (2) even if such authority existed, the trial judge did not abuse his discretion in denying the motion. The motion was for an unspecified sum of money to retain an attorney to represent Appellant during the custody phase of the litigation. Thus, even if the denial of the motion was error, the issue is now moot. Appellant did not retain an attorney, but proceeded *pro se;* so there is no attorney's fee to be retrospectively reimbursed. Nor could the issues of custody and child support be relitigated since the child is now over the age of eighteen. However, whether a trial judge may order a party to a divorce proceeding to advance prospective attorney's fees to the other party is an issue "capable of repetition, yet evading review." *Lexington Herald–Leader Co., Inc. v. Meigs,* Ky., 660 S.W.2d 658, 661 (1983) (quoting *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 546, 96 S.Ct. 2791, 2797, 49 L.Ed.2d 683 (1976)). Thus, we will address the issue even though it is now moot in this case.

Appellant cites *Shepherd v. Mann,* Ky., 490 S.W.2d 760 (1973), as authority for ordering an advance of prospective attorney's fees. There, the trial judge had ordered the husband to advance the sum of $300.00 for the wife's attorney's fee and threatened to use his contempt powers to enforce the order. The case reached this court on an appeal from a denial of a petition for a writ of prohibition. We did not directly address the trial judge's authority to order the advance payment of fees, but held only that the husband had not shown that payment of the $300.00 fee would cause him great or irreparable injury and, thus, the case was an inappropriate one for application of the extraordinary remedy of a writ. Thus, the issue before us remains one of first impression in this jurisdiction.

At the outset, we note that the vast majority of jurisdictions, whether by specific statutory provision or by judicial construction, hold that it is within a trial court's discretion to order a party to a divorce action to pay prospective attorney's fees to enable the opposing party to maintain or defend the action. A. Nadel, Annotation, *Authority of Divorce Court to Award Prospective or Anticipated Attorney's Fees*, 22 A.L.R.4th 407, 413–19 (1983). Specifically in *Svetich v. Svetich,* 425 N.E.2d 191 (Ind.Ct.App.1981), the Indiana Court of Appeals interpreted Indiana's version of Section 313 of the Uniform Act[4] as authorizing an award of prospective attorney's fees. *See also State ex rel Carlson v. Aubuchon,* 669 S.W.2d 294 (Mo.Ct.App.1984). KRS 403.220 provides in pertinent part that "[t]he court from time to time ... may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for attorney's fees." We deem this language broad enough to authorize an order requiring one party to advance prospective attorney's fees necessary to enable the other party to obtain adequate representation.

In finding that the statute "clearly refers to legal services that have already been rendered" (slip op. at 16–17), the Court of Appeals emphasized the immediately following language in the statute, *viz:* "including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment." We interpret this language not as excluding an award of prospective attorney's fees, but as authorizing awards of fees for services rendered other than during the actual litigation of the case. The purpose of KRS 403.220 is to prevent one party to a divorce action

from controlling the outcome solely because he or she is in a position of financial superiority, whether because he/she has control of the marital assets or because he/she has the more lucrative position of employment. In that circumstance, the legislature has authorized the presiding judge to order the financially superior party to bear the cost of the litigation, including the other party's reasonable attorney's fees. If that authority were limited to attorney's fees already incurred, access to the courts could be effectively denied to a party with insufficient funds to retain counsel in the first place. *Cf. Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); *Francis v. Taylor,* Ky., 593 S.W.2d 514 (1980) (access to divorce courts cannot be denied those who are unable to pay filing fees and court costs).

As with reimbursement of fees already incurred, an assignment of prospective attorney's fees rests in the sound discretion of the trial court. In the latter instance, however, this discretion must be even more carefully exercised. In awarding prospective attorney's fees, the trial court should consider the possibility that the case might be settled or that the parties might reconcile *before* the awarded fee is actually earned. The statutory language "from time to time" anticipates the appropriateness in a particular case of requiring that the fee, whether prospective or already incurred, be paid in increments rather than in a lump sum. Uniform Marriage and Divorce Act, *supra* note 3, § 313, at 450 (Official Comment).

This is not a case where the trial judge operated under a misconception that he lacked authority to order an advance of prospective attorney's fees.

4. Ind.Code § 31–1–11.5–16 (repealed P.L. 1– 1997, § 157).

*Compare Adkins v. Adkins,* Ky.App., 574 S.W.2d 898 (1978). He simply overruled the motion. We note, however, that Appellant did not even advise the judge what sum she needed to retain counsel for the custody phase of the trial. Presumably, the attorney Appellant hoped to hire required a retainer fee. If so, that fact and the amount of the requested retainer should have been communicated to the family court judge. The statute does not require the judge to guess or estimate what amount is requested, but only to determine whether the amount requested is "reasonable."

### III. ASSIGNMENT OF DEBT.

Appellant asserts that all debts incurred during the marriage are presumed to be marital debts and should be assigned in the same proportions as the marital assets. Here, the family court judge made an approximately equal distribution of assets and debts, except that he assigned the $26,000.00 debt owed to Appellant's mother and two friends entirely to Appellant.

There is no statutory authority for assigning debts in an action for dissolution of marriage. Nevertheless, such assignments are routinely made as a matter of common law in all divorce actions, *e.g.*:

> As to the requirement that Obie pay a $1,000 debt to Sears, we find no problem. The trial court determined that the debt was a marital debt, and in making the division of marital properties and assignment of all assets and debts, the court ordered this debt be paid by Obie. We find nothing reversible on this point in fact or law.

*Spratling v. Spratling,* Ky.App., 720 S.W.2d 936, 938 (1986). Nor is there a statutory presumption as to whether debts incurred during the marriage are marital or nonmarital in nature. In *Bodie v. Bodie,* Ky.App., 590 S.W.2d 895 (1979), a panel of our Court of Appeals held that in the absence of a statutory provision, no presumption with respect to marital debts should be judicially implied. *Id.* at 896. Shortly thereafter, another Court of Appeals panel held that debts incurred after the separation of the parties and the cessation of joint activities, but before entry of the final decree, should be assigned to the party who incurred them, implying that all such debts are nonmarital. *O'Neill v. O'Neill,* Ky.App., 600 S.W.2d 493, 496 (1980). Other panels held that such debts could be deemed marital in nature if incurred for the benefit of the family, *e.g.*, to provide necessary support for the children, *Gipson v. Gipson,* Ky. App., 702 S.W.2d 54, 55 (1985); or if incurred to acquire property designated as marital property. *Daniels v. Daniels,* Ky. App., 726 S.W.2d 705, 706–07 (1986).[5] However, the opinion in *Daniels, supra,* went on to say that all debts incurred after the marriage and before the decree "are presumed to be marital debts unless the presumption is rebutted." *Id.* at 706. Citing *Daniels,* yet another panel held in *Underwood v. Underwood, supra,* that "[d]ebts accrued subsequent to separation, but before entry of a divorce decree are rebuttably presumed to be marital debts." *Id.* at 445. The only other Court of Appeals decision relevant to this inquiry is *Van Bussum v. Van Bussum,* Ky.App., 728 S.W.2d 538, 539 (1987), which held that a debt incurred after separation for the sole benefit of the party by whom it was incurred should be assigned to that party alone.

We conclude that the Court of Appeals got it right in *Bodie v. Bodie,*

---

**5.** Property purchased after separation but before entry of the decree is presumed to be marital property. KRS 403.190(2); *Stallings v. Stallings,* Ky., 606 S.W.2d 163 (1980).

*supra.* Where there is no statutory presumption, one should not be judicially inferred. *Herron v. Herron,* Ky., 573 S.W.2d 342, 344 (1978) (in the absence of a statutory mandate, there is no presumption in favor of an equal division of marital property). In *Bodie,* a $14,610.00 debt was incurred by the husband without the wife's knowledge. The husband, who was the only party who knew the purpose for the debt, declined to share that information with the court. *Id.* at 896. Application of a presumption that all debts incurred during the marriage are marital debts would have required the wife to prove that the debt was nonmarital—an impossible burden, since only the husband knew the truth. *Bodie* applied principles of equity, not artificial presumptions, in affirming the assignment of the debt to the husband.

■■■■ Debts incurred during the marriage are traditionally assigned on the basis of such factors as receipt of benefits and extent of participation, *Van Bussum v. Van Bussum, supra,* *O'Neill v. O'Neill, supra, Bodie v. Bodie, supra, Inman v. Inman,* Ky.App., 578 S.W.2d 266, 270 (1979); whether the debt was incurred to purchase assets designated as marital property, *Daniels v. Daniels, supra;* and whether the debt was necessary to provide for the maintenance and support of the family, *Gipson v. Gipson, supra.* Another factor, of course, is the economic circumstances of the parties bearing on their respective abilities to assume the indebtedness. To the extent that *Daniels v. Daniels, supra,* and *Underwood v. Underwood, supra,* hold that there is a presumption with respect to debts incurred during a marriage, they are overruled. Nor is there any presumption that debts must be divided equally or in the same proportions as the marital property. *Cf. Herron v. Her-*

*ron, supra; McGowan v. McGowan,* Ky. App., 663 S.W.2d 219 (1983).

■■■■ As with issues pertaining to the assignment of marital property, issues pertaining to the assignment of debts incurred during the marriage are reviewed under an abuse of discretion standard. Here, the trial court concluded that the $26,000.00 debt was incurred primarily for Appellant's own benefit and secondarily to maintain the parties' child in an expensive private school to which Appellee objected. Appellee was paying maintenance and child support when these debts were incurred. According to Appellant, she borrowed this money to provide additional maintenance and child support. If these debts were assigned to Appellee, the effect would be to allow Appellant to unilaterally increase Appellee's maintenance and support obligation to a level substantially higher than that established by court order. We conclude that the assignment of these debts to Appellant was not an abuse of discretion.

Accordingly, for the reasons stated, the decision of the Court of Appeals is affirmed and this case is remanded to the Jefferson Circuit Court to reconsider the spousal maintenance award in accordance with the mandate of the Court of Appeals.

GRAVES, JOHNSTONE and WINTERSHEIMER, JJ., concur.

KELLER, J., concurs by separate opinion in which LAMBERT, C.J., and STUMBO, J., join.

KELLER, Justice, concurring.

I agree with the majority that the trial court did not abuse its discretion in its rulings concerning attorney's fees and debt assignment, and I therefore concur in the result reached by the majority. I cannot agree, however, with that portion of the majority opinion which holds that no pre-

sumptions exist regarding debts incurred during a marriage and which overrules *Daniels v. Daniels*[1] and *Underwood v. Underwood.*[2] I write separately concerning Part III (Assignment of Debt) because I believe existing Court of Appeals precedent correctly holds that KRS 403.190(3) creates a rebuttable presumption that debts incurred individually or jointly during the course of a marriage, but prior to a valid separation agreement, are marital debts which "were incurred for the benefit of both parties to the marriage."[3]

KRS 403.190(3) creates a presumption that property acquired by the parties during a marriage is marital property:

All property acquired by either spouse after the marriage and before a decree of legal separation is presumed to be marital property, regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, ten-

ancy by the entirety, and community property. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection (2) of this section.[4]

In *Daniels v. Daniels,* the Court of Appeals held that KRS 403.190(3) implicitly created a parallel presumption for debts incurred during the marriage:

KRS 403.190(3) establishes as being presumed to be marital that property acquired after the marriage but before the decree is entered but also provides that the presumption is rebuttable. *Similarly, debts so accrued are presumed to be marital debts unless the presumption is rebutted.*[5]

This holding is consistent with the rule in other jurisdictions where "[d]ebts are for the most part characterized as marital or separate by the same principles that govern assets...."[6] Today's majority, howev-

---

1. Ky.App., 726 S.W.2d 705 (1986).

2. Ky.App., 836 S.W.2d 439 (1992).

3. *Gipson v. Gipson,* Ky.App., 702 S.W.2d 54, 55 (1985) (defining the "litmus test" for characterization of debts as marital or nonmarital).

4. KRS 403.190(3).

5. *Daniels v. Daniels, supra* note 1 at 706. *See also Underwood v. Underwood, supra* note 2 at 445 ("Debts accrued ... before entry of a divorce decree are rebuttably presumed to be marital debts." *Id.*).

6. PRINCIPLES OF THE LAW OF FAMILY DISSOLUTION: ANALYSIS AND RECOMMENDATIONS § 4.03, Comment b at 90 (American Law Institute, Proposed Final Draft, Part I, 1997). *See also In re Marriage of Pahlow*, 39 S.W.3d 87, 92 (Mo. App.2001):

"It is presumed that all property acquired by either spouse subsequent to the separation of the parties but prior to the dissolution decree is marital property...." "The party questioning the presumption of mari-

tal property has the burden of rebutting the presumption[.]"
... "the phrase 'marital debts' encompasses all debts incurred during the marriage, either jointly or separately," and "the fact that a spouse does not control or participate in the decision to make a particular debt does not preclude allocation of that debt to the non-participating spouse." ... [W]e cannot say the trial court erred in not accepting Husband's contention that these were not marital transactions. The funds borrowed were borrowed ... while they were still married and are presumed marital.... Accordingly, we find that Husband did not prove ... that the proceeds from the Ring loan—and the stock that was subsequently purchased by the loan proceeds— was not marital in nature.
*Id.;* Mo.Rev.Stat. § 452.330(3) (2001) (presumption as to marital property identical to KRS 403.190(3)); *Simplot v. Simplot*, 96 Idaho 239, 526 P.2d 844, 851 (1974) ("A rebuttable presumption has been established [by court precedent] that all *property* acquired during the marriage is community property. There is nothing in the record to indicate that the Idaho Bank & Trust debt was not in-

er, holds that KRS 403.190(3) implies no such presumption regarding marital debts and resurrects *Bodie v. Bodie:*[7]

We cannot accept the argument that KRS 403.190 creates a presumption that all debts acquired during the marriage are marital debts. The appellant is the only logical party who can produce evidence as to the marital nature of the debts . . . .

There is no Kentucky law precisely on point as to a presumption of marital indebtedness. Although it can be argued that a converse presumption could be implied from KRS 403.190(3), the judicial reasoning used in *Herron v. Herron,* Ky., 573 S.W.2d 342 (1978), precludes that result. In *Herron, supra,* the Kentucky Supreme Court disapproved gratuitous presumptions in regard to marital property. *Herron, supra* is obviously distinguishable on its facts, but we believe the reasoning is applicable to this situation. The statute itself does not create a presumption as to marital debts and we do not believe one can be judicially implied. All debts incurred during marriage are not necessarily marital debts. Consideration

should be given to the nature of the debts based upon the receipt of benefits and the extent of participation. *Inman v. Inman,* Ky.App., 578 S.W.2d 266 (1979).[8]

The bases for today's majority's conclusion mirror those articulated in *Bodie v. Bodie:* (1) the desire to avoid "gratuitous presumptions"; (2) concerns that a presumption regarding marital debts is not grounded in fact because not all debts incurred during the marriage are actually marital debts; and (3) the assumption that such a presumption regarding marital debts would unfairly allocate the burden of proof. I find none of these concerns persuasive, and I believe that KRS 403.190(3) creates a presumption that debts incurred during the marriage are marital debts. Common sense, logic, and the assumptions regarding the economic nature of a marital partnership upon which Kentucky's property distribution rules are premised[9] support the *Daniels* conclusion. The majority's contrary conclusion—that the presumption covers assets (property acquired) but not liabilities (debts incurred)—risks anomalous marital

---

curred for the benefit of the community it is therefore presumed to be a community *debt.*" *Id.* (emphasis added and footnote omitted)); *Hardy v. Hardy,* 311 S.C. 433, 429 S.E.2d 811, 813–14 (Ct.App.1993).

**7.** Ky.App., 590 S.W.2d 895 (1979).

**8.** *Id.* at 896. *See also O'Neill v. O'Neill,* Ky. App., 600 S.W.2d 493, 496 (1980) ("[W]hile there is a presumption in KRS 403.190 that all property acquired during marriage is marital, there is no similar presumption as to debts." *Id.*).

**9.** *See* Louise E. Graham & James E. Keller, 15 Kentucky Practice (Domestic Relations Law) § 15.3 at 504 (West 1997):

The broad policies underlying [Kentucky's prior] restoration statute were not, however, always compatible with those of

KRS 403.190. The restoration statute's purpose was to place the parties in the position that they would have enjoyed had the marriage never occurred and was intimately connected to the problem of fault in breaking up the marriage. Functionally, it relied heavily on the availability of permanent alimony. *The current statute, on the other hand, recognizes only the ground of irretrievable breakdown and treats marriage as a partnership.* It permits consideration of both monetary and nonmonetary contributions to the acquisition of marital property. *The purpose of the current statute is to increase the amount of marital property available for division between the parties by ignoring record title and presuming that all property acquired during the marriage is marital* unless it falls within a few narrow statutory exceptions.

*Id.* (emphasis added and footnotes omitted).

balance sheets and frustrates efficient litigation in domestic cases.

In *Herron v. Herron,*[10] this Court did not condemn all presumptions, but merely found no authority to support a presumption regarding the manner in which a trial court should divide marital property.[11] The *Herron* Court expressed its concerns about a presumption urged by the Court of Appeals which would have required trial courts to divide marital property *equally* rather than "in just proportions" as dictated by KRS 403.190(1):

> As we see the problem, if the presumption adopted by the Court of Appeals in this case is allowed to stand, the inevitable result would be a proliferation of presumptions in other fact situations, and the standards adopted by the General Assembly in KRS 403.190 would become meaningless.[12]

While the *Herron* Court correctly identified the proposed presumption concerning how trial courts should divide marital property as "gratuitous" and without statutory support, KRS 403.190 contains an explicit presumption regarding the characterization of property as marital or non-

marital. The presumption regarding marital debts which the *Daniels* panel found implicit in KRS 403.190(3) *complements* rather than *contradicts* the explicit presumption regarding marital property, risks none of the slippery slope concerns raised in *Herron,* and flatly defies the "gratuitous" label.

In my opinion, the majority's latter two concerns are greatly outweighed by the need for consistency in property characterization at dissolution. The KRS 403.190(3) marital debt presumption, like its counterpart, the marital property presumption, is obviously not conclusive in every factual situation—in fact, the statute explicitly states that the presumption can be overcome by evidence to the contrary.[13] Thus, if the evidence demonstrates that a debt was incurred to benefit only one spouse, it should be characterized as a nonmarital debt.[14] The presumption merely generalizes from the majority of situations and expedites the process by absolving parties of the responsibility and expense of proving the nature of each and every debt incurred during a marriage. Presumptions exist for one reason—"to perform relative-

---

**10.** Ky., 573 S.W.2d 342 (1978).

**11.** *See Id.* at 344:

> Thus the courts have a legislative mandate *to divide marital property* in accordance with the standards set out in the statute [KRS 403.190(1)(a)–(d) ]. It is significant to us that the statutes do not mention "presumptions"; and in the absence of this, we are of the opinion the legislative mandate is binding upon us and that *presumptions in the division of marital property* should not be indulged in at all.
> *Id.* (emphasis added).

**12.** *Id.*

**13.** *See* Robert G. Lawson, THE KENTUCKY EVIDENCE LAW HANDBOOK § 10.05 at 549 (Michie 1993):

> There are far too many statutory presumptions in Kentucky to try to list all those that might qualify for exemption under the Rule [KRE 301]. One illustration of what a statute might look like is KRS 403.190, which creates a presumption that all property acquired by a spouse during marriage is marital property and then provides that the presumption can be "overcome by a showing that the property was acquired by [gift, bequest, devise, or descent.]" ... In [this] statute[ ] *there is a clear indication of legislative intent to shift to the party against whom the presumption operates a full burden of proof—the burden of going forward with evidence and the risk of nonpersuasion.*
> *Id.* (emphasis added); *Underwood v. Underwood, supra* note 2 at 441, n. 1.

**14.** *See Gipson v. Gipson, supra* note 3 at 55.

ly simple functions in the litigation process"[15]—and the KRS 403.190(3) marital debt presumption *facilitates* proof requirements. The majority's concerns about how the presumption allocates the burden of proof ignore the extensive pretrial discovery available in domestic actions. Litigants in dissolution cases consistently trace funds and proceeds in a variety of contexts, and I believe the majority's contention that the presumption will prevent a spouse from proving a debt nonmarital is groundless. In my opinion, the majority's decision overruling *Daniels* and removing the KRS 403.190(3) marital debt presumption will actually increase delay and expense in domestic actions.

While I would affirm the trial court's judgment because I find its rulings as to marital and nonmarital debts supported by substantial evidence, I strongly disagree with the majority's repudiation of the KRS 403.190(3) presumption concerning marital debts. The Court of Appeals "got it right" in *Daniels* and *Underwood*, and today's majority errs when it breathes life into *Bodie* —a decision which the Court of Appeals has not followed for over a decade.

LAMBERT, C.J. and STUMBO, J. join this concurring opinion.

---

15. *Lawson, supra* note 13 at § 10.00 at 538.