RENDERED:  JANUARY 15, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2016-CA-1854-MR

ROBERT GRUMBLATT                         APPELLANT

|  | APPEAL FROM JEFFERSON CIRCUIT COURT |
| --- | --- |
| v. | HONORABLE DEBORAH DEWEESE, JUDGE |
|  | ACTION NO. 15-CI-502339 |

DEBORAH GRUMBLATT                         APPELLEE

AND
NO. 2016-CA-1932-MR

DEBORAH GRUMBLATT                  CROSS-APPELLANT

|  | CROSS-APPEAL FROM JEFFERSON CIRCUIT COURT |
| --- | --- |
| v. | HONORABLE DEBORAH DEWEESE, JUDGE |
|  | ACTION NO. 15-CI-502339 |

ROBERT GRUMBLATT                  CROSS-APPELLEE

AND
NO. 2018-CA-0800-MR

DEBORAH ("DEBBY") GRUMBLATT                    APPELLANT


                    APPEAL FROM JEFFERSON CIRCUIT COURT
v.                  HONORABLE DEBORAH DEWEESE, JUDGE
                    ACTION NO. 15-CI-502339


ROBERT GRUMBLATT                               APPELLEE



OPINION
AFFIRMING IN PART, VACATING IN PART, AND REMANDING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; GOODWINE AND KRAMER, JUDGES.

GOODWINE, JUDGE: Robert Grumblatt ("Robert") appeals from a post-dissolution order of the Jefferson Family Court. He argues the family court erred in determining two accounts and several tax debts were entirely marital property. Deborah Grumblatt ("Deborah") cross-appeals. After careful review, we affirm in part, vacate in part, and remand.

## BACKGROUND

Robert and Deborah were married on February 10, 2001, in New Orleans, Louisiana. They separated on June 23, 2016. On August 30, 2016, the

-2-

family court held a trial on issues of property distribution. The family court entered a limited decree of dissolution on September 13, 2016. The court ruled on property division issues in an order entered November 7, 2016, but reserved ruling on division of Robert's State Farm pension and whether to award Robert maintenance. The family court designated the November 2016 order as final and appealable under CR[1] 54.01, so Robert appealed the judgment. On March 14, 2017, the family court entered an order denying Deborah's motion to alter, amend, or vacate the November 2016 order and denying her request for attorney's fees. The family court held a hearing on July 12, 2017, on the remaining issues of dividing Robert's pension and awarding maintenance for Robert. On April 27, 2018, the family court entered an order dividing the pension and awarding Robert maintenance. Deborah timely appealed this order on May 23, 2018.[2]

In the November 2016 order, the family court ruled on three issues that are the subject of Robert's appeal. First, the family court reviewed the evidence submitted at trial and determined Robert's Ameriprise account was entirely marital because Robert "was fully capable of providing adequate documentation to properly support his non-marital argument and simply failed to

---

[1] Kentucky Rules of Civil Procedure.

[2] Deborah's 2018-CA-0800-MR appeal was consolidated with her 2016-CA-1854-MR cross-appeal. We note that Deborah failed to attach the April 27, 2018 order as required by CR 76.12(4)(c)(vii).

do so." Record ("R.") at 243. Second, the family court determined Robert's VOYA annuity was entirely marital. Robert claimed the annuity was funded by an inheritance from his father. However, the only evidence Robert provided was his testimony and a single-page transaction history, indicating the issue date for the annuity was May 11, 2009. Robert also tried to submit a 1996 letter from the executor of his father's estate (his brother) as proof the money was inherited. The family court determined the letter was hearsay and did not admit it into evidence. Third, the family court determined tax debts from the 2004, 2009, 2011, and 2012 tax years were entirely marital even though the parties filed their taxes separately and the tax debts were all in Deborah's name. The family court reasoned that all the debts "were accrued during the course of the marriage." R. at 245.

On appeal of the November 7, 2016 order, Robert argues the family court erred in determining that the following were entirely marital assets and debts: (1) the Ameriprise account in his name; (2) the VOYA annuity in his name; and (3) the tax debts in Deborah's name. For her cross-appeal, Deborah argues the family court erred by: (1) reserving its ruling on Robert's State Farm pension and his request for maintenance; (2) requesting additional evidence; (3) shifting the burden of proof of the classification of the pension asset to both parties, rather than Robert alone; and (4) failing to award her attorney's fees.

For her direct appeal of the April 27, 2018 order, Deborah argues the family court erred by (1) not assigning Robert's pension as entirely marital; (2) not allocating the marital portion of the pension 50/50; and (3) awarding Robert maintenance. Facts pertinent to both appeals and Deborah's cross-appeal are further developed below.

## STANDARD OF REVIEW

We may only set aside findings of fact if they are clearly erroneous. We must ask whether those findings are supported by substantial evidence. "'[S]ubstantial evidence' is '[e]vidence that a reasonable mind would accept as adequate to support a conclusion' and evidence that, when 'taken alone or in the light of all the evidence, . . . has sufficient probative value to induce conviction in the minds of reasonable men.'" *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (citations omitted). Even if we might have reached a different finding, "'due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses' because judging the credibility of witnesses and weighing evidence are tasks within the exclusive province of the trial court." *Id.* (citations omitted). Furthermore, "[o]n appellate review of a trial court's ruling regarding the classification of marital property, we review *de novo* because the trial court's classification of property as marital or non-marital is based on its

-5-

application of KRS[3] 403.190; thus, it is a question of law." *Heskett v. Heskett*, 245 S.W.3d 222, 226 (Ky. App. 2008) (citing *Holman v. Holman*, 84 S.W.3d 903, 905 (Ky. 2002)).

## ANALYSIS

### 1. ROBERT'S APPEAL – 2016-CA-1854-MR

Under KRS 403.190, property is characterized and divided using a three-step process: "(1) the trial court first characterizes each item of property as marital or nonmarital; (2) the trial court then assigns each party's nonmarital property to that party; and (3) finally, the trial court equitably divides the marital property between the parties." *Sexton v. Sexton*, 125 S.W.3d 258, 265 (Ky. 2004) (quoting *Travis v. Travis*, 59 S.W.3d 904, 909 (Ky. 2001)). When an item of property consists "of both nonmarital and marital components, . . . a trial court must determine the parties' separate nonmarital and marital shares or interests in the property on the basis of the evidence before the court." *Id.* In doing so, the trial court applies the "source of funds rule" to characterize property "*i.e.*, whether it is marital, nonmarital, or both, is determined by the source of the funds used to acquire the property." *Id.*

In applying the source of funds rule, trial courts engage in "tracing," which involves:

---

[3] Kentucky Revised Statutes.

"[t]he process of tracking property's ownership or characteristics from the time of its origin to the present." In the context of tracing nonmarital property, "[w]hen the original property claimed to be nonmarital is no longer owned, the nonmarital claimant must trace the previously owned property into a presently owned specific asset." The concept of tracing is judicially created and arises from KRS 403.190(3)'s presumption that all property acquired after the marriage is marital property unless shown to come within one of KRS 403.190(2)'s exceptions. A party claiming that property, or an interest therein, acquired during the marriage is nonmarital bears the burden of proof.

*Id.* (footnotes omitted).

First, we address whether the family court properly characterized the Ameriprise account as entirely marital property. The family court determined the Ameriprise account was entirely marital property because Robert failed to provide adequate evidence for the family court to trace the funds to nonmarital sources. Robert argues, under *Smith v. Smith*, 503 S.W.3d 178 (Ky. App. 2016), that his testimony and one document demonstrated that a portion of the funds in the Ameriprise account existed before the marriage. In addition to his own testimony, Robert introduced a State Farm 401(k) Savings Plan summary of account showing the account value as of February 2001. Robert asserted the State Farm 401(k) was rolled into the Ameriprise account upon his retirement.

The family court disagreed with Robert's argument based on the following findings:

[Deborah's] own evidence shows that the first quarter of the Ameriprise account was Q1 of 2014. However, . . . the RiverSource Variable Annuity was actually the primary asset in [Robert's] Ameriprise account. According to [Robert's] 2015 tax returns, he first acquired the RiverSource Variable Annuity on June 25, 2012. Given that the date of acquisition provides the initial calculation of basis, this June 25, 2012 date seriously undermines [Robert's] attempts to trace the non-marital component of his State Farm 401(k) through to his Ameriprise account. [Robert's] own State Farm 401(k) statements show that he held that asset until 2013. Nor does he explain how the $303,357.07 taken from his 401(k) became the more-than $400,000 in his Ameriprise Account. Further, [Robert] was fully capable of providing adequate documentation to properly support his non-marital argument and simply failed to do so. Although [Robert] claims he provided an uninterrupted timeline accounting for the location of the State Farm 401(k) funds, his timeline has holes in it, and the unanswered questions are simply too numerous to find that he has met his burden. The Court finds that [Robert's] entire Ameriprise account is marital. It shall be divided equally between the parties.

R. at 244.

Robert argues the *Smith* case supports his contention that his testimony alone was sufficient evidence to prove a portion of the Ameriprise account was nonmarital. In *Smith*, Mark argued Amy failed to establish her nonmarital claim on the equity in the marital residence. 503 S.W.3d at 182. Amy and her mother testified she received a "$25,000 CD as a gift from her grandmother," but presented no documentation to establish this. *Id.* at 183-84. "Mark also testified that the funds from the CD were used to make the down

-8-

payment on the . . . residence[.]" *Id.* at 184. This Court held "[s]ubstantial evidence in the record supports the family court's findings on this issue[,]" rejecting Mark's argument. *Id.*

Robert argues that, in *Smith*, testimony alone, even without documentary evidence, was sufficient to trace an asset to a nonmarital source. As pointed out by Deborah, the trial court in *Smith* did not need documentation of the existence of the CD because the opposing party acknowledged its existence and confirmed it was the source of the funds used for the down payment on the marital residence. Here, Deborah did not agree the source of any funds in the Ameriprise account was nonmarital. The family court concluded it was unable to trace the source of funds in the Ameriprise account based on the evidence Robert presented. We agree with the family court that although some portion of the Ameriprise account was nonmarital, Robert failed to meet his burden of proving it. As such, based on the evidence presented, the family court properly characterized the entirety of the Ameriprise account as marital property under KRS 403.190.

Second, we address whether the family court properly characterized the entire VOYA annuity as marital property. Robert claimed he funded the annuity with nonmarital funds inherited from his father. To prove his claim, he presented the family court with a 1996 letter from the executor of his father's estate, Robert's brother. Deborah objected to the introduction of the letter, arguing

it was hearsay and says nothing about an annuity. Robert's brother was dead and could not be called to testify. Robert did not counter Deborah's hearsay objection, nor offer any exceptions to the hearsay rule. Robert did not disclose the VOYA annuity in his mandatory case disclosure but instead waited to disclose it until his deposition on August 10, 2016. The first time Robert raised a claim that the VOYA annuity was his nonmarital property was in a response filed the day before trial. As such, Deborah objected to Robert's claim that the VOYA annuity was his nonmarital property.

The family court made the following findings of fact regarding the characterization of the VOYA annuity:

> [Robert] has a VOYA Annuity which he failed to disclose until his deposition on August 10, 2016. He received $431.13 a month from this annuity. The Court is troubled by the lack of disclosure on the part of [Robert]. His testimony was the sole evidence proffered to show the non-marital character of the asset. [Robert] claims it was started with funds inherited from his father prior to the marriage, but the chief piece of non-testimonial evidence before the Court is a single-page transaction history, . . . which indicates the issue date for the annuity was May 11, 2009. The Court cannot trace the source of the funds for this annuity from the evidence before it. The Court finds that [Robert's] VOYA Annuity is marital. It shall be equally divided between the parties.

R. at 244.

Robert's argument on appeal centers around the hearsay issue and argues characterization of the annuity as entirely marital constitutes a sanction for his untimely disclosure. However, we need not address these arguments. The analysis of the characterization of the VOYA annuity is nearly identical to that of the Ameriprise account. Even if the 1996 letter had been admitted to prove Robert inherited funds from his father, the mere fact that Robert inherited money was insufficient for the family court to trace the funds from when he received them to the current VOYA annuity. Furthermore, a single transaction sheet showing the VOYA annuity was issued during the marriage, in 2009, was insufficient to trace the funds to Robert's inheritance. Deborah disputed that the source of the funds was nonmarital. We agree with the family court that Robert failed to meet his burden of proving the nonmarital source of the funds for the VOYA annuity. As such, the family court properly characterized the entire VOYA annuity as marital property.

Third, we address whether the family court properly characterized the tax debts in Deborah's name as marital debts. "It is vital to understand that unlike marital property, there is no presumption that a debt incurred during a marriage is marital or nonmarital in nature." *Smith v. Smith*, 235 S.W.3d 1, 15 (Ky. App. 2006) (citing *Neidlinger v. Neidlinger*, 52 S.W.3d 513, 522 (Ky. 2001), *overruled by on other grounds Smith v. McGill*, 556 S.W.3d 552 (Ky.

2018)). Instead, "debts are generally 'assigned on the basis of such factors as receipt of benefits and extent of participation[.]' Finally, there is no presumption that debts must be divided equally or in the same proportion as the marital property." *Id.* (footnotes omitted). "[T]he burden of proof that the debt is marital is upon the party that incurred it." *Allison v. Allison*, 246 S.W.3d 898, 907 (Ky. App. 2008) (citation omitted).

The family court made the following findings in characterizing the tax debts as marital debts:

> The parties have tax debts relating to the 2004, 2009, 2011, and 2012 tax years, all in [Deborah's] name, totaling $15,627.21. Although the parties were in the habit of filing individual tax returns, the debts were all accrued during the course of the marriage. The parties shall divide the tax debt equally, and each shall be responsible for $7,813.61 of the debt.

R. at 245.

Robert argues due to the lack of presumption, and scant evidence from Deborah, she did not demonstrate that the tax debts were marital. Deborah makes no mention of the lack of presumption that debts are marital. Instead, she argues the family court's finding that the debts accrued during the marriage was not clearly erroneous. In its findings, the family court merely stated that because the debts were accrued during the marriage, the debts were marital and divided them equally.

-12-

Based on these findings, we are unconvinced that the family court applied the above case law in determining the tax debts were marital. Although we cannot disturb the family court's factual finding that the debts accrued during the marriage, we disagree, based on our *de novo* review, that the debts are marital merely because they accrued during the marriage. Thus, we vacate that portion of the November 7, 2016 order and remand for further findings. On remand, the family court should reexamine whether Deborah met her burden of proving the tax debts were marital by applying the following factors: "receipt of benefits and extent of participation" and the more extensive list of factors in *Neidlinger*, 52 S.W.3d at 523.

## 2. DEBORAH'S CROSS-APPEAL OF THE NOVEMBER 7, 2016 AND MARCH 14, 2017 ORDERS – 2016-CA-1854-MR; AND HER DIRECT APPEAL OF THE APRIL 27, 2018 ORDER - 2018-CA-0800-MR.

For her cross-appeal, Deborah argues the family court erred by (1) reserving its ruling on Robert's State Farm pension and his request for maintenance; (2) requesting additional evidence; (3) shifting the burden of proof of the classification of the pension asset to both parties; and (4) failing to award her attorney's fees.

For her direct appeal, Deborah argues the family court erred by (1) assigning a portion of Robert's State Farm pension as nonmarital; (2) awarding Robert more than fifty percent of the marital portion of Robert's State Farm

pension; and (3) awarding Robert maintenance. Deborah's arguments are almost entirely conclusory, unsupported, and confusing, but for the sake of being thorough, we address each one.

First, we address Deborah's arguments regarding the family court's division of Robert's State Farm pension. Deborah's arguments on this issue are lengthy. She begins by arguing the family court abused its discretion in reserving the issue of dividing Robert's State Farm pension after he failed to present clear and convincing evidence at trial. Deborah argues the family court incorrectly determined she bore an equal responsibility for calculating the marital share of the pension. She then makes novel arguments regarding the doctrine of *res judicata*, which have no applicability to the facts of this case. In sum, Deborah takes issue with how the family court reached its decision in dividing the pension but only summarily argues the family court's division was not equitable and failed to consider all factors under KRS 403.190.

In its November 7, 2016 order, the family court determined the parties failed to submit sufficient evidence for the court to trace the marital and nonmarital components of Robert's State Farm pension and reserved the issue. In its March 14, 2017 order denying Deborah's motion to alter, amend, or vacate the November 7, 2016 order, the family court determined the character of the pension was partly nonmarital and partly marital, so both parties bore the burden to prove the

-14-

nonmarital portion of the asset. The family court held a hearing on July 12, 2017, regarding the division of the pension and heard testimony from both parties, Deborah's expert witness, and reviewed written findings from Robert's expert witness who was not present at the hearing.

On April 27, 2018, the family court entered an order dividing the State Farm pension and awarding Robert maintenance. Based on the evidence presented, the family court found, as of the date of the parties' marriage in 2001, Robert earned an annual pension of $28,127.15. "The annual benefit after the October 7, 2003 Qualified Domestic Relations Order from Robert's previous divorce was $6,174.70." R. at 601. As of the date of the order, Robert received $74,328.00 per year or $6,194.00 per month.

The family court found $68,153.30 of Robert's $74,328.00 annual State Farm pension benefit was marital. The family court determined that of the $6,194 monthly benefit, $514.56 is Robert's nonmarital property and $5,679.44.00 is marital property that the family court divided.

The family court applied the factors under KRS 403.190(1) in dividing the marital portion of the State Farm pension:

> (a) Contribution of each spouse to acquisition of the marital property, including contribution of a spouse as homemaker;
>
> (b) Value of the property set apart to each spouse;

(c) Duration of the marriage; and

(d) Economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children.

The family court found both parties worked full time during the marriage and contributed to the overall marital corpus. The parties were married for fifteen years. The family court determined the key factor in deciding what constitutes a just division of the pension is the value of the property set apart to each spouse.

Robert argued he was awarded $306,132.30 in assets during the divorce and Deborah was awarded $717,867.50. Robert noted $385,000.00 of Deborah's assets came from her nonmarital inheritance. Deborah spent her inheritance on the purchase of her home, a car for her daughter, her daughter's wedding, and her daughter's education expenses. The family court was not concerned with Deborah's choice to spend her inheritance and instead concentrated its analysis on the value of property each party received in the dissolution action.

The family court also examined the parties' monthly income and assets awarded to each party earlier in the divorce proceedings. The family court determined Deborah's monthly income was $10,715.83, which included a credit of $917.00 per month from her own State Farm pension she deferred. The family

court determined Robert's monthly income was $8,136.50 and noted Deborah's monthly income exceeds Robert's by $2,579.33.

Based on the economic circumstances of the parties, the family court found an equal division of the pension would not be a just result. Deborah had more income than Robert and received twice as much property. As such, the family court determined Deborah would receive $1,500.00 per month of Robert's State Farm pension.

Nowhere in Deborah's argument does she address the actual characterization of the nonmarital and marital portions of the State Farm pension. Instead, she makes numerous, confusing arguments regarding the family court's process of characterizing the pension. As we will demonstrate, Deborah's arguments reveal that the family court properly characterized the nonmarital and marital portions of the State Farm pension.

Deborah's first argument regarding division of the pension is that the family court should have ruled on the issue following the trial instead of reserving it. She argues Robert failed to meet his burden at trial, and the family court should not have allowed Robert to present more evidence following the trial. She asserts, under CR 59.01(g), that a "new trial" was not warranted because there was no newly discovered evidence to be presented at a subsequent hearing.

Conversely, Robert argues CR 54.02(1) authorizes the issuance of split judgments as occurred in this case, and such judgments are "subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." We agree with Robert's contention that it is within the family court's discretion to reserve issues that need additional evidence and to split judgments.

In support of her argument that the family court should not have reserved division of the State Farm pension, Deborah also argues the family court incorrectly determined she equally bore the burden of calculating the marital share. In its order denying Deborah's motion to alter, amend, or vacate, the family court determined Deborah and Robert equally bore the burden of establishing the marital and nonmarital portions of the pension. Deborah argued the entire pension should be considered marital because Robert failed to prove the calculation of the nonmarital portion at trial.

At trial, Robert proved a portion of his State Farm pension was nonmarital, as it was clear he held the pension before the parties' marriage. "There is no question that twenty-two years of [Robert's] pension interest is non-marital, less whatever portion was lost to him in his 1998 dissolution proceedings." R. at 293. In arguing the entire pension was marital because Robert failed to prove the exact amount of nonmarital funds in his pension, Deborah essentially argued she

-18-

should receive appreciation on Robert's nonmarital portion of his pension. We agree with the family court that this was an issue of characterization of the pension and not tracing the source of the funds. As such, we agree that Deborah and Robert each bore then the burden of proving the marital and nonmarital portions of the pension, and the family court properly reserved the issue.

Deborah argues the doctrine of *res judicata* barred the family court from unequally dividing Robert's State Farm pension.

> The doctrine of res judicata is formed by two subparts: 1) claim preclusion and 2) issue preclusion. Claim preclusion bars a party from re-litigating a previously adjudicated cause of action and entirely bars a new lawsuit on the same cause of action. Issue preclusion bars the parties from relitigating any issue actually litigated and finally decided in an earlier action.

*Yeoman v. Commonwealth, Health Policy Bd.*, 983 S.W.2d 459, 464-65 (Ky. 1998) (citations omitted). Issue preclusion requires that the issues be identical. *Id.* at 465.

Deborah argues that because the family court divided equally all property addressed at trial, claim preclusion requires equal division of the pension. For claim preclusion to bar litigation of division of the pension, three "elements must be present. First, there must be identity of the parties. Second, there must be identity of the causes of action. Third, the action must have been resolved on the merits." *Id.* (citations omitted).

-19-

Neither issue preclusion nor claim preclusion applies in this instance. In her brief, Deborah states, "[i]t is clear from the November 2016, [findings of fact and conclusions of law], that the Court equalized the division of the marital property, 50-50, while reserving the division of the pension." Appellee's Response and Cross-Appellant Brief at 13-14. The family court clearly reserved ruling on the pension because it recognized that it did not have enough information to calculate the marital and nonmartial portions of the pension. The family court's decision to split equally the other items of marital property did not preclude the court from dividing the pension differently.

Deborah's final argument regarding division of the pension is that the family court failed to explain its calculation or provide additional findings of fact to explain its departure from the calculations and findings made in the November 2016 order. Deborah presented no real argument on the merits demonstrating the family court's division of the pension was legally incorrect. Although Deborah "is obviously dissatisfied with the trial court's decision, threadbare recitals of the elements of a legal theory, supported by mere conclusory statements, form an insufficient basis upon which this Court can grant relief." *Jones v. Livesay*, 551 S.W.3d 47, 52 (Ky. App. 2018). Deborah advances nothing of substance in support of her contention that the family court incorrectly calculated the division of the pension. We will not scour the record to construct Deborah's argument, "nor

will we venture to find support for [her] underdeveloped arguments." *Prescott v. Commonwealth*, 572 S.W.3d 913, 924 (Ky. App. 2019) (citation omitted). As such, we conclude the family court did not abuse its discretion in reserving the division of the pension and was not barred by *res judicata* from dividing the pension unequally.

Second, Deborah raises another *res judicata* argument that has little basis in the family court's 2018 order. She argues *res judicata* barred the family court from considering assets that did not exist at the time of the original trial in determining the equitable division of the pension and awarding Robert maintenance. Here, she argues the family court improperly made a finding of dissipation in the 2018 order, so it was estopped from attributing additional assets to her at the July 2017 hearing.

Based on this argument, we assume Deborah references the portion of the family court's 2018 order that compares the value of property each party received pursuant to the divorce. Deborah testified that she spent her $385,000.00 inheritance to purchase her home and to pay for her daughter's car, wedding, and education expenses. The family court reasoned that it was unconcerned with how she chose to spend the money and only considered how much was apportioned to each party upon dissolution.

The family court made no finding of dissipation or marital misconduct. Instead, it considered the total value of the property each spouse received in the divorce proceedings without regard for how much of the property remained at the time of the July 2017 hearing on division of the pension and maintenance. Again, Deborah fails to demonstrate how *res judicata* applies in this instance, and her argument is unsupported by any relevant law. As such, we decline to address this conclusory argument further. *Jones*, 551 S.W.3d 47; *Prescott*, 572 S.W.3d 913.

Third, Deborah argues the family court erred in awarding Robert maintenance. The family court awarded Robert $1,500.00 per month of maintenance for 36 months, which is the same monthly amount Deborah is to receive from Robert's pension. Under KRS 403.200, a family court may award maintenance under the following circumstances:

> (1) In a proceeding for dissolution of marriage or legal separation, or a proceeding for maintenance following dissolution of a marriage by a court which lacked personal jurisdiction over the absent spouse, the court may grant a maintenance order for either spouse only if it finds that the spouse seeking maintenance:
>
> > (a) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and
> >
> > (b) Is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances

> make it appropriate that the custodian not be required to seek employment outside the home.

The family court must consider all relevant factors, including the following:

> a) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;
>
> (b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;
>
> (c) The standard of living established during the marriage;
>
> (d) The duration of the marriage;
>
> (e) The age, and the physical and emotional condition of the spouse seeking maintenance; and
>
> (f) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

KRS 403.200(2).

The family court found the standard of living during the marriage was high, and there would be a significant disparity in the parties' ability to maintain that standard without some maintenance. The family court found the parties' fifteen-year marriage was long enough for it to consider spousal support. The family court found Robert was past retirement age, and Deborah had significant

ability to meet her own needs while contributing to Robert's maintenance. The family court also reasoned that, "at his age, reemployment at anything comparable to his previous position will be difficult." R. at 603-04. Based on these findings, the family court concluded maintenance was appropriate because Robert lacked "sufficient property to provide for his reasonable needs and [was] unable to support himself through appropriate employment." R. at 604.

Deborah takes issue with the family court's calculation of Robert's monthly income and expenses. She argues the family court should have applied Robert's expenses at the time of the original trial instead of the expenses he submitted at the subsequent hearing. Deborah also argues the family court should have imputed Robert's State Farm salary to him because he voluntarily retired. Robert retired at the age of 62, which is the age of eligibility for Social Security retirement. Deborah cites no case law in support of her arguments regarding the calculation of Robert's income and expenses. She also cites no support for her argument that Robert's employment income should be imputed to him because he is able to work but chose to retire. Because her argument is unsupported and conclusory, we decline to address it further. *Jones*, 551 S.W.3d 47; *Prescott*, 572 S.W.3d 913.

Finally, Deborah argues the family court erred in denying her request for attorney's fees. KRS 403.220 allows the award of attorney's fees in dissolution actions under certain circumstances:

> The court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment. The court may order that the amount be paid directly to the attorney, who may enforce the order in his name.

The family court determined the financial disparity between the parties guided his denial of Deborah's request for attorney's fees. The family court cited *Neidlinger*, 52 S.W.3d at 518, in support of this finding, but after the family court's ruling on this issue, *Smith*, 556 S.W.3d 552, overruled *Neidlinger* on this exact issue. In *Smith*, the Supreme Court of Kentucky held the plain language of KRS 403.220 "requires only that the trial court consider the financial resources of the parties before awarding attorney's fees—not that a financial disparity exist." *Smith*, 556 S.W.3d at 555.

The family court considered Deborah's stipulated nonmarital resources, the equal division of nearly all the parties' significant marital assets, and Deborah's greater monthly income. Clearly, there was a disparity in the parties' financial resources. Under the *Neidlinger* standard, which was applicable at the

time the order was entered, Deborah was not entitled to attorney's fees.  The family court's finding also meets the standard in *Smith* because it had the discretion to consider financial disparity in considering the financial resources of the parties.  *Id.* at 556.

In addition to considering the financial resources of the parties, Deborah asked the family court to consider Robert's obstructive tactics during the litigation and award her attorney's fees.  *Gentry v. Gentry*, 798 S.W.2d 928, 937-38 (Ky. 1990) (holding that obstructive tactics and conduct can justify an award of attorney's fees).  *See also Smith*, 556 S.W.3d at 554.  Robert responded by arguing that Deborah also engaged in obstructive tactics.

In response to Deborah's request for attorney's fees based on Robert's obstructive tactics during litigation, the family court erroneously held "[s]uch a finding would be contrary to law."  R. at 295.  *Gentry* and *Smith* hold otherwise.  Therefore, we vacate and remand the family court's finding that Deborah was not entitled to attorney's fees.  We instruct the family court to consider the parties' obstructive tactics, if any, during the litigation, in addition to their financial resources, and determine whether Deborah is entitled to an award of attorney's fees.

# CONCLUSION

In conclusion, regarding Robert's arguments on appeal, we affirm the family court's characterization of the Ameriprise account and VOYA annuity as marital property. We vacate the family court's finding that the tax debts in Deborah's name were marital and remand with instructions to apply the above discussed factors in reexamining the characterization of those debts. Regarding Deborah's arguments on cross-appeal, we vacate the family court's finding that she was not entitled to attorney's fees and remand with instructions to reexamine this issue as set forth above. Regarding her direct appeal, we affirm the family court's rulings regarding Robert's State Farm pension and maintenance.

ALL CONCUR.


BRIEFS FOR APPELLANT/
CROSS-APPELLEE:

F. Todd Lewis
Louisville, Kentucky

BRIEFS FOR APPELLEE/
CROSS-APPELLANT:

Allen McKee Dodd
Kyle Louis Schickel
Louisville, Kentucky