RENDERED: APRIL 27, 2023
TO BE PUBLISHED

# Supreme Court of Kentucky

2021-SC-0481-DG

CHARLES F. MAHL                                                         APPELLANT

V.
ON REVIEW FROM COURT OF APPEALS
NO. 2019-CA-0874
JEFFERSON CIRCUIT COURT NO. 05-CI-500770

LOUANNE MAHL                                                              APPELLEE

AND

2021-SC-0487-DG

LOUANNE MAHL                                                            APPELLANT

V.
ON REVIEW FROM COURT OF APPEALS
NO. 2019-CA-0874
JEFFERSON CIRCUIT COURT NO. 05-CI-500770

CHARLES F. MAHL                                                          APPELLEE

**OPINION OF THE COURT BY JUSTICE BISIG**

**REVERSING AND REINSTATING**

After twenty-eight years of marriage and two children, Dr. Charles and Louanne Mahl were divorced in 2007. The circuit court ordered Charles to pay maintenance for ten years, and once that order expired Louanne sought modification. The circuit court held multiple hearings and ultimately modified

maintenance and awarded attorney's fees to Louanne's attorney. Charles appealed but failed to name Louanne's attorney as a party in the notice of appeal. Louanne filed a cross-appeal, arguing that Charles's appeal should be dismissed for failure to name an indispensable party. The Court of Appeals declined to address the attorney's fee issue but reversed the circuit court's modification of maintenance. Both parties sought discretionary review in this Court. Having granted discretionary review and carefully reviewed the record, we reverse the Court of Appeals and reinstate the circuit court's judgment.

## FACTS AND PROCEDURAL HISTORY

Dr. Charles Mahl (Charles) and Louanne Mahl (Louanne) were married on May 28, 1978 and are the parents of two adult children. Charles and Louanne remained married for twenty-eight years. When the parties married, Charles was in his medical residency program and Louanne was a surgical nurse. Charles started a successful ophthalmology practice in 1982, which grew to twenty-one offices and fifty employees, earning between five and seven million dollars a year at its peak. Louanne worked in Charles's practice as a surgical nurse and office manager, playing a significant role in establishing and operating the practice.

In 1999, Charles became disabled and began receiving $28,360 monthly in disability income. His disability stemmed from back problems, which progressively worsened over the years and eventually led to nerve problems in his leg. At that time, Louanne was unemployed and suffered from back and neck pain related to a broken vertebra sustained in a horseback riding accident

2

in 1999. Her condition was worsened by an automobile accident in 2006. Louanne testified that she did not plan on returning to work and did not believe she could do so.

Louanne filed a petition for dissolution of marriage on March 2, 2005. After a two-day hearing, the circuit court entered a judgment on August 1, 2007 that divided the marital property approximately equally with each party receiving about $4.5 million in assets. Notably, the circuit court ordered that Louanne receive $764,117 from Charles's IRA trust and $59,368 from the parties' joint West End Financial account (collectively the $800,000 judgment). Louanne also received $1,677,749 in proceeds from the sale of their marital residence. In addition, the circuit court awarded Louanne maintenance of $6,000 per month until Charles reached sixty-five years of age in 2017 or upon her death, remarriage, or cohabitation.

Charles appealed and argued, among other things, that the circuit court erred by awarding Louanne permanent maintenance because it failed to make a factual finding under Kentucky Revised Statute (KRS) 403.200(1) that Louanne lacked sufficient property to provide for her reasonable needs. Louanne filed a cross-appeal, raising various issues about the circuit court's division of property and valuation of marital assets. She also argued that the circuit court erred in ordering that maintenance cease when Charles turned sixty-five. The Court of Appeals affirmed the maintenance award, noting that the circuit court's findings were supported by substantial evidence. *Mahl v. Mahl,* No. 2007-CA-2160-MR & No. 2007-CA-2344-MR, 2009 WL 1884375 (Ky.

3

App. July 2, 2009).  Specifically, the Court of Appeals relied on Louanne's back and neck condition, ADHD, depression, prescription medication use and limits on daily activity in upholding the maintenance award.

In early 2009, while the appeal to the Court of Appeals was pending, the parties received notification that their West End Financial accounts had been frozen.  The parties held funds at West End Financial that were managed by the parties' mutual friend, William Landberg.  Unfortunately, Landberg lost the entirety of the funds entrusted to him in a Ponzi scheme.[1]  Neither party was aware they had been defrauded until they began implementing the mandates of the circuit court's orders.  As such, both parties lost a significant amount of money, including the $800,000 in funds awarded to Louanne in the divorce decree.  Additionally, Louanne lost $1.38 million that she separately and individually invested with Landberg.  At the time the Ponzi scheme was discovered, the accounts were frozen.  Despite these losses, Charles continued paying Louanne $6,000 per month in maintenance, for a total of $720,000, until he turned sixty-five as required by the circuit court.

In December 2016, Louanne filed a motion to modify maintenance, alleging changed circumstances.  She asserted that the changed circumstances

---

[1] A Ponzi scheme is defined by BLACK'S LAW DICTIONARY (11th ed. 2019) as follows:

> A fraudulent investment scheme in which money contributed by later investors generates artificially high dividends or returns for the original investors, whose example attracts even larger investments. • Money from the new investors is used directly to repay or pay interest to earlier investors, usu[ally] without any operation or revenue-producing activity other than the continual raising of new funds.

4

included (1) Charles having returned to an active and robust medical practice despite being disabled at the time of the 2007 divorce decree; (2) her not having received the $800,000 judgment; and (3) her loss of her own sums in the Ponzi scheme. Louanne testified that she has earned no income since the divorce decree, other than approximately $46,700 from the sale of one of the properties she was awarded. She also stated that she is unable to work due to her disability.

After numerous hearings, the circuit court issued an order in June 2018 determining that substantial and continuing change in circumstances occurred, which rendered the original maintenance award unconscionable. As justification for modification, the circuit court recognized that Louanne did not receive the $800,000 judgment nor expected interest income from these funds.[2] At the time of the hearing, neither party had received any of the lost funds from the West End Financial accounts and had pursued legal action against West End Financial to no avail.

Notably, the circuit court indicated that certified financial records demonstrated that Charles withdrew a total of $1,062,272 from various accounts in violation of an April 6, 2005 status quo order in which the circuit court directed that "[n]either party shall make any changes to his or her assets

---

[2] When the circuit court originally awarded maintenance in 2007, it relied on Diane Medley, an accountant, who was jointly retained as an expert by both parties. Medley provided an opinion as to Louanne's ability to earn income from the investment of her assets and the various tax consequences of different investment and maintenance scenarios. Medley testified that Louanne could expect a reasonable rate of return of 9.81% on her investments.

5

or estate plans which in any way places such assets beyond the reach of the Court." These funds included $702,272 from his IRA trust account, $75,000 from a joint account he shared with Louanne and $285,000 from his individual trust account. Charles stated that he did not pay Louanne any of that money and disputed the authenticity of the certified records. Charles emphasized that Louanne received account statements from West End Financial until 2009 and waited nearly ten years to allege he improperly withdrew funds. The lapse in time made it impossible to know what transactions occurred or who was responsible for the withdrawals.

Ultimately, on March 28, 2019, the circuit court ordered Charles to pay Louanne $8,688 per month in maintenance until her remarriage, cohabitation, or death, or until she collects the $800,000 judgment as originally awarded to her in the 2007 divorce decree, whichever comes first. The circuit court ordered that the 2007 judgment is subject to statutory interest, pursuant to KRS 360.040. In addition, the circuit court ordered Charles to pay $45,619.60 in Louanne's attorney's fees to Jonathan Breitenstein. The circuit court specifically stated that the attorney fee was payable to Mr. Breitenstein who could enforce the judgment in his own name.

Charles filed a notice of appeal on May 30, 2019, raising five issues. Relevant to this appeal, Charles argued that the circuit court abused its discretion in modifying the maintenance award and ordering attorney's fees. Notably, Charles did not name Breitenstein as a party in the notice of appeal or in the prehearing statement in the Court of appeals. In response, Louanne

6

filed a motion to dismiss the entire appeal pursuant to *Fink v. Fink,* 519 S.W.3d 384 (Ky. App. 2016), wherein the Court of Appeals dismissed an appeal prior to briefing based on the appellant's failure to name an attorney as an appellee in an appeal that challenged an attorney's fee award. The Court of Appeals denied Louanne's motion to dismiss, but in a June 30, 2020 order stated that "while dismissal is not merited, the Court holds that Appellant's claim regarding attorney fees fails for want of jurisdiction."

In its August 6, 2021 opinion, the Court of Appeals concluded that the circuit court abused its discretion in granting Louanne's motion to modify maintenance rather than allowing the maintenance award of $6,000 per month to terminate in 2017 in accordance with the 2007 divorce decree. Specifically, the Court of Appeals disagreed with the circuit court's determination that the changes in circumstances rendered the original maintenance award unconscionable. The Court of Appeals emphasized that both parties suffered losses since the divorce decree and noted that Louanne could have achieved financial stability with proper management of the assets and maintenance payments she received.

Charles and Louanne both filed motions for discretionary review in this Court. Having granted both motions for discretionary review, heard oral arguments, and carefully considered the record, we reverse the Court of Appeals' decision and remand to the circuit court for reinstatement of the order modifying maintenance.

7

## ANALYSIS

The issues raised in both appeals are (1) whether the circuit court erred in modifying the original maintenance award; (2) whether the failure to name an attorney with an enforceable attorney's fee award is fatal to an appeal; and (3) whether the attorney's fee award was proper. We address each issue in turn.

### I. The Court of Appeals erred in reversing the circuit court's modification of maintenance.

Louanne argues that the Court of Appeals erred in reversing the circuit court's modification of maintenance. The statute that allows modification of maintenance awards, KRS 403.250, states that "the provisions of any decree respecting maintenance may be modified **only** upon a showing of changed circumstances so substantial and continuing as to make the terms unconscionable." (Emphasis added). "Unconscionable" means "manifestly unfair or inequitable." *Shraberg v. Shraberg,* 939 S.W.2d 330, 333 (Ky. 1997) (quoting *Wilhoit v. Wilhoit,* 506 S.W.2d 511 (Ky. 1974)). The parties' circumstances at the time of the decree and creation of the maintenance obligation are "the status quo against which the changed circumstances requirement of KRS 403.250(1) is to be measured." *Rayborn v. Rayborn,* 185 S.W.3d 641, 644 (Ky. 2006). We review a circuit court's decision on modifying maintenance for an abuse of discretion, *Woodson v. Woodson,* 338 S.W.3d 261, 262-63 (Ky. 2011), reversing a circuit court only where its decision is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English,* 993 S.W.2d 941, 945 (Ky. 1999).

8

The circuit court considered *Woodson,* which interpreted KRS 403.250 and its explicit standard of only allowing modification "upon a showing of changed circumstances so substantial and continuing as to make the terms unconscionable." The *Woodson* Court reasoned that while KRS 403.250 sets a strict standard to protect the finality of judgments, the statute "does not divest trial judges of the discretion to decide when modification outweighs the virtue of finality in seeking fairness and equity in what many times may be dire consequences and complicated options." 338 S.W.3d at 263. The circuit court concluded that because Louanne did not receive the $800,000 judgment, or the estimated 9.81% of interest she would have earned on that money, there were "multiple substantial and continuing changes in financial circumstances." Further, despite being disabled at the time of the divorce, Charles established a new medical practice in the years thereafter.

Pursuant to *Block v. Block,* 252 S.W.3d 156, 160 (Ky. App. 2007), the circuit court emphasized that the parties' circumstances at the time of the decree compared to their circumstances at the time of the hearing were significantly different. At the time of the decree, the parties were on equal financial footing but at the time of the hearing they were not, which constitutes a substantial change rendering the original maintenance award unconscionable.

The circuit court conducted four hearings in late 2018 and early 2019 and the parties presented copious information about their finances and circumstances. Louanne testified that she cannot work in the nursing field

9

due to her disability and has no income. In fact, she has not earned significant income in decades, receives food stamps, and has been selling stock to pay her living expenses of approximately $4,663.94 per month, which she classified as "the bare minimum," as of January 2019.[3] At the hearing, Louanne was sixty-five years old and although she became eligible for social security benefits at age sixty-three, she chose to delay receipt of social security to maximize her benefits. Her financial assets included the condominium she resides in, valued at $379,000, and approximately $6,000 in stock.

Charles received disability payments until October 2017. He testified about the two businesses he is involved in, although he claimed his current wife is the sole owner of one of those businesses. He listed his income from those two businesses as $200 per month and provided evasive and ambiguous answers about how funds from those businesses are handled or how much money the two businesses generated. The circuit court concluded that it "was not provided adequate information to discern the entirety of [Charles's] income or assets." The circuit court stated, based on Charles's explanation of payments he makes, that his monthly expenses totaled approximately $16,928 per month. In discussing Charles's assets, the circuit court stated

> [u]ltimately, [Charles] is asking this Court to believe that he has $16,928 in monthly expenses, including a payment of $96,000 per

[3] In her mandatory case disclosure filed February 8, 2017, Louanne listed her monthly expenses as $8,166.27. At that time, she was still receiving maintenance from Charles in the amount of $6,000 per month. At the April 2018 hearing, she testified that her monthly expenses were $5,911.16. Louanne also explained that she has many house repairs, dental work, and medical procedures that she has not completed as she cannot afford them. With those costs included, Louanne argued her monthly expenses are $12,000 per month.

> year for household expenses, runs expenses such as $17,097.95 in meals, his Maserati payment, Turks and Caicos vacations, etc. through his business, but earns $200.00 per month. That is fictitious, at best.

Despite his questionable testimony, the circuit court concluded that Charles has financial stability. The circuit court underscored the fact that Louanne has no income. Further, the circuit court emphasized that in 2007, the prior circuit court judge had no reasonable expectation that Louanne would return to work and that her circumstances had not changed. In fact, Louanne is even farther removed from the workforce and is not in a position to find gainful employment. Notably, the parties were married for twenty-eight years and share two children.

The circuit court also considered the expert testimony of Douglas Weaver, a retired IRS Estate Tax Examiner. Weaver analyzed Charles's 2014-2017 personal tax returns, business returns, and his mandatory case disclosure. Weaver testified that there were assets listed on tax returns that were not listed in Charles's mandatory case disclosure, such as a $1.3 million note to "Charles F. Mahl M.D. P.A." He also estimated that Charles has an unreported "cash hoard" of at least $538,411. As to his business tax return, he inferred that Charles was likely overreporting losses and underreporting income. Charles objected to the admissibility of Weaver's testimony on several grounds, but the circuit court overruled the objection. The circuit court also noted that Charles was ordered to turn over complete financials and that he repeatedly refused to submit or submitted insufficient response to financial discovery throughout the case, despite the circuit court's warning that his

11

discovery refusals could prohibit him from asserting a defense regarding his inability to pay maintenance.[4]

Ultimately the circuit court concluded that "[a]t the time of the Decree, the parties were on equal financial footing. Now, they are certainly not. That is manifestly unfair." Charles spent a great deal of time arguing that the West End Financial losses were not his fault because he was also a victim of the Ponzi scheme. The circuit court reasoned that fault is irrelevant because the modification statute does not contemplate fault. The circuit court posited that if fault were considered, it needed to look no further than Charles's violation of the status quo order by unilaterally moving the bulk of his assets while the divorce was pending.

The Court of Appeals acknowledged a change in circumstances but concluded that the changes did not render the original maintenance award unconscionable. The appellate court emphasized that Charles, like Louanne, lost significant sums of money in the Ponzi scheme. Also, Louanne received approximately $720,000 in maintenance payments from Charles and at least $1 million in marital assets. Louanne's lack of financial stability at the time of the modification proceeding was largely attributable to a combination of bad luck and mismanagement of the assets she received in the divorce proceeding.

---

[4] For example, Louanne determined, through Charles's submitted discovery, that Charles maintained at least seven checking accounts. However, Charles only disclosed three of those accounts in his mandatory case disclosure. The circuit court also stated that Charles failed to provide sufficient business records for his two companies and did not submit his social security documentation.

12

The Court of Appeals also noted that it is manifestly unfair to essentially require Charles to continue working past traditional retirement age to pay Louanne maintenance.

We agree with the circuit court that modification was warranted. An appellate court is not authorized to substitute its judgment for that of the circuit court where the circuit court's decision is supported by substantial evidence. *Combs v. Combs,* 787 S.W.2d 260, 262 (Ky. 1990). This case has a protracted history that began with Louanne filing the divorce petition in 2005. The parties were consistently before the circuit court from December 2016 until the orders modifying maintenance were entered in mid-2018. The circuit court held hearings, considered pleadings, and ultimately issued its last opinion in this matter, which set the maintenance modification amount, prior to this appeal in March 2019.

Specifically, the circuit court conducted five hearings regarding the modification of maintenance and other issues. While a different judge originally entered the divorce decree, the circuit court judge assigned to consider Louanne's motion to modify maintenance managed this case, these parties, and these issues for over three years. The circuit court was undoubtedly in the best position to listen to the testimony, review hundreds of pages of evidence, and assess the credibility of the witnesses who testified. "The fact that a reviewing judge might have decided the issue differently had he/she occupied the trial bench is not a sufficient basis for concluding that the

trial court abused its discretion." *Perrine v. Christine*, 833 S.W.2d 825, 827 (Ky. 1992).

Louanne, a party to a twenty-eight-year marriage, did not receive the considerable sum of money awarded to her in the original divorce decree. She also did not receive any of the interest she could have earned on those sums. Charles's circumstances also changed in that, at the time of the decree, he was not expected to earn money above his disability payments. At the time of modification, he not only returned to medical practice but opened a successful clinic in Florida. These changes in circumstances are manifestly unfair. "The burden of proof to change maintenance orders is sufficiently strict to insure relative stability and finality." *Woodson,* 338 S.W.3d at 263. While this Court has acknowledged a compelling need for finality in divorce cases, it bears repeating that "the statute does not divest trial judges of the discretion to decide when modification outweighs the virtue of finality in seeking fairness and equity in what many times may be dire consequences and complicated options." *Id.* We conclude that the Court of Appeals erred by reversing the circuit court. The circuit court's judgment should be affirmed.

## II. Charles's failure to name Louanne's attorney as a party to the appeal was not a fatal error.

In modifying the maintenance award, the circuit court also ordered Charles to pay $45,619.60 in Louanne's attorney's fees to Jonathan Breitenstein. The circuit court order specifically stated that the attorney fee was payable to Mr. Breitenstein who could enforce the judgment in his own name. In the notice of appeal to the Court of Appeals, Charles failed to name

14

Breitenstein as a party. Louanne argues that Charles's appeal must be dismissed because Charles failed to name an indispensable party. Charles argues that attorneys are not necessary parties to appeals raising fee issues and that dismissing an action for failure to name an attorney as a party is draconian.

Whether a party is indispensable is determined by considering whether the party's "'absence prevents the Court from granting complete relief among those already parties.'" *Browning v. Preece,* 392 S.W.3d 388, 391 (Ky. 2013) (quoting *Milligan v. Schenly Distillers, Inc.*, 584 S.W.2d 751, 753 (Ky. App. 1979)). Breitenstein undoubtedly has an interest that would be affected by the decision of an appellate court, regardless of whether that interest is affected adversely or favorably.

This Court has required strict compliance, rather than substantial compliance, with naming indispensable parties in the notice of appeal. *City of Devondale v. Stallings,* 795 S.W.2d 954, 956 (Ky. 1990); *see also Hutchins v. Gen. Elec. Co.,* 190 S.W.3d 333, 337 (Ky. 2006) (holding that "[a] policy of strict compliance governs the time within which an appellant must invoke the court's jurisdiction, naming all indispensable parties."). The Court in *Stallings* explained that policy considerations "mandate strict compliance with the time limit on filing of the notice of appeal. Potential parties to an appeal have the right to know within the time specified in the rule that they are parties." 795 S.W.2d at 957. Indeed, caselaw dating back nearly sixty years indicates that appellate courts declined to address the adequacy or reasonableness of

15

attorney's fee awards unless the attorney is named as a party in the appeal. *See Carter v. Carter,* 382 S.W.2d 400 (Ky. 1964).

In a prior decision, this Court explained when attorneys are indispensable parties for the purposes of disputing an attorney's fee award in the context of divorce proceedings. *Neidlinger v. Neidlinger,* 52 S.W.3d 513 (Ky. 2001), *overruled on other grounds by Smith v. McGill,* 556 S.W.3d 552 (Ky. 2018). In *Neidlinger,* an appellant filed a motion requesting that appellee reimburse her approximately $9,700 for costs and attorney's fees appellant had already paid. *Id.* at 517. The circuit court overruled the motion, and on appeal the Court of Appeals concluded that the attorney's fees issue was unpreserved for appellate review because appellant did not name her attorney as a party to the appeal. *Id.* at 517-18. On discretionary review, this Court explained that "[i]f the 'reasonable amount' is ordered paid directly to the attorney, the attorney 'may enforce the order in his own name' and, thus is the real party in interest and a necessary and indispensable party to any appeal from that order." *Id.* at 519 (quoting KRS 403.220). However, if an attorney's fee "is ordered paid to the client, the client remains the primary obligor of the fee, [and] thus is the real party in interest with respect to an appeal from the order." *Id.*

Later, in *Fink,* 519 S.W.3d 384, the Court of Appeals again addressed the indispensable party issue in the divorce proceeding attorney fee context. In *Fink,* a circuit court ordered James Fink to pay $5,000 in Elizabeth Fink's attorney's fees in a divorce proceeding, noting that the sum was payable

16

directly to counsel who could enforce the order in his name. *Id.* James failed to name Elizabeth's attorney in the notice of appeal. *Id.* As a result, the Court of Appeals concluded that failure to name an indispensable party is fatal to an appeal and dismissed James's appeal. *Id.* at 385. The Court of Appeals noted that any attempt to amend the notice of appeal must have been accomplished within the normal time requirements for filing the notice of appeal. *Id.*

In his dissent, then-Judge Thompson opined that dismissing the appeal is particularly troublesome because it precludes appellate review of the attorney fee issue. *Id.* at 386. Requiring an attorney to be named as a party to an appeal is illogical because a client "always will be primarily obligated to pay her attorney." *Id.* Additionally, Judge Thompson noted that Elizabeth's attorney agreed that James should have been permitted to amend his notice of appeal. *Id.*

If we applied the strict compliance mandate from *Stallings* and reinforced the view of the majority of the Court of Appeals in *Fink,* it would lead to a conclusion that Charles's appeal should be dismissed in its entirety because he failed to list Breitenstein as a party in the notice of appeal. According to these cases, it is that simple – to satisfy the indispensable party requirement, an appellant need only list the attorney, who was never considered a "party" in the proceedings below, even at the time an attorney's fee award was requested pursuant to KRS 403.220, as a party in the appellate action. While we acknowledge that courts have applied strict compliance in the context of notices of appeal and indispensable parties since the *Stallings* decision, recent

17

cases from this Court and changes to our rules of appellate procedure mark a shift in those views.

In *M.A.B. v. Cabinet for Health and Family Services,* 635 S.W.3d 90, 91 (Ky. 2021), M.A.B. timely appealed a circuit court decision that terminated her parental rights to the Court of Appeals. The appellate court dismissed her appeal for failure to name the children in the notice of appeal. While the children's guardian *ad litem* was served with the notice of appeal, M.A.B. did not name her children in the notice of appeal. *Id.* at 92. This Court held that substantial compliance with Kentucky Rule of Civil Procedure (CR) 73.03, the rule governing notices of appeal, shall be found if a guardian *ad litem* is given adequate notice of an appeal from a termination of parental rights even if the notice fails to name the child or children. *Id.* at 93. The Court found difficulty in rationalizing the denial of access to a constitutional right to appeal based entirely on a technicality. *Id.* In its holding, this Court reiterated that

> if an appeal's alleged defect is anything other than failure to file a timely notice of appeal, timely cross-appeal, or timely notice for discretionary review, an appellate court should consider, on a case-by-case basis, an adequate remedy to address the alleged defect.

*Id.* at 97. While this Court did not explicitly state that children are not necessary parties to a termination appeal, we concluded that "serving the child's guardian *ad litem* with the notice of appeal is the functional equivalent of naming the child: it is sufficient to protect the child's interests, give the child adequate notice of the appeal, and confer jurisdiction to the appellate court

18

over the child." *Id.* We remanded the case to the Court of Appeals for consideration of M.A.B.'s appeal on the merits. *Id.*

Similarly, *Cates v. Kroger,* 627 S.W.3d 864 (Ky. 2021), involved constitutional challenges to a workers' compensation statute. An appellant failed to name the Attorney General as a party in his notice of appeal. Despite this failure, this Court held that "[t]he Attorney General had notice, has not shown or argued prejudice, and filed a timely brief. We find despite strict compliance not being satisfied, the policy considerations behind the rule are met in this case." *Id.* at 874; *see also Lassiter v. Am. Express Travel Related Servs. Co., Inc.,* 308 S.W.3d 714 (Ky. 2010) (holding that naming the Department of Treasury in the caption of the notice of appeal is the functional equivalent of naming the State Treasurer, an indispensable party); *Flick v. Est. of Wittich,* 396 S.W.3d 816 (Ky. 2013) (holding that naming the estate in the notice of appeal was the functional equivalent of naming the co-administrators).

Like the guardian *ad litem* in *M.A.B.,* Breitenstein had sufficient notice of the appeal and the ability to discern that Charles disputed the attorney's fee award. Breitenstein was named as the attorney on the distribution list and was also named as Louanne's attorney on the first filing in the Court of Appeals and included on that distribution list. While we recognize that naming an individual as a party to an appeal and distributing a notice of appeal to a party's attorney are not the same, Breitenstein nonetheless had adequate

19

notice of the appeal and the ability to protect his own interest in seeking affirmation of the attorney's fee award.

We also must take this opportunity to discuss the rules that formerly and currently apply to appeals. Previously, appeals were governed by CR 73. CR 73.03(1) stated that "[t]he notice of appeal **shall** specify by name all appellants and appellees." (Emphasis added). For decades, courts in this Commonwealth have imposed a strict compliance requirement in conjunction with this rule. *Hagan v. Transp. Cabinet,* 559 S.W.3d 783, 784 (Ky. 2018); *Nelson Cnty. Bd. of Educ. v. Forte,* 337 S.W.3d 617, 626 (Ky. 2011); *Stallings,* 795 S.W.2d at 957.

But this Court has since adopted new Rules of Appellate Procedure (RAP), effective January 1, 2023. These new rules mark a shift from the potential procedural traps formerly faced by parties in appeals. For example, RAP 2(A)(2) states that

> [u]pon timely filing of the notice of appeal from a final and appealable order on all claims in an action, all parties to the proceedings from which the appeal is taken, except those who have been dismissed in an earlier final and appealable order, shall be parties before the appellate court.

The new rule automatically joins all parties, who have not been dismissed, from the proceedings below in an appeal. Rule 2(A)(2) continues to state that

> [t]he timely filing of a notice of appeal is jurisdictional. The failure to comply with any other rule of appellate procedure, or any order of the court, does not affect the validity of the appeal, but is ground for such action as the appellate court deems appropriate as set forth in RAP 10.

RAP 10(B) states that

20

[a] party's failure to take any step other than the timely filing of a notice of appeal, cross-appeal, or motion for discretionary review does not affect the validity of the appeal or other proceeding in an appellate court.

While, under this rule, the court reserves the ability to issue a deficiency notice, strike filings, or impose fines, for example, the appeal is still valid despite the failure to comply with appellate rules other than timely filing of a notice of appeal, notice of cross-appeal, or motion for discretionary review.[5] So, the failure to name an indispensable party is no longer automatically fatal to an appeal. These rules, interpreted together, indicate that strict compliance for naming an indispensable party should no longer be required.

As such, we hold that Charles's failure to name Breitenstein as a party in the notice of appeal filed with the Court of Appeals was not a fatal defect. Charles timely filed the notice of appeal and included an argument about the validity of the attorney's fee awarded to Breitenstein. Breitenstein was listed in the distribution list and thus had adequate notice of the appeal. Therefore, the Court of Appeals erred by declining to examine the attorney's fee issue. *See M.A.B.*, 635 S.W.3d at 97.

### III. The circuit court did not abuse its discretion in awarding attorney's fees.

Finally, Charles argues that the award of attorney's fees was an abuse of discretion. Specifically, he states that he is unable to pay the award and it is

---

[5] For example, RAP 2(B)(2) still requires an appellant to specify the parties to the proceedings from which the appeal is taken in the notice of appeal. However, under RAP 10(B), failure to comply with this requirement does not automatically render the appeal invalid.

21

excessive. The Court of Appeals declined to address Charles's attorney fee award argument, opining that it was not properly before the court. One year prior, a separate panel of the Court of Appeals declined to dismiss the appeal for failure to name an indispensable party but held that the attorney fee issued failed for want of jurisdiction. Thus, the Court of Appeals, in its August 6, 2021 opinion, expressed no opinion on the attorney's fee award.

In seeking maintenance modification, Louanne was originally represented by J. Fox DeMoisey of DeMoisey Law Office, PLLC. By a letter dated June 7, 2016, DeMoisey agreed to represent Louanne for $1 and agreed to front the cost of the litigation but reserved the right to request attorneys' fees and costs pursuant to KRS 403.220. At some point in the litigation, Charles moved to disqualify DeMoisey because of a personal relationship that developed between Louanne and DeMoisey. Charles argued that DeMoisey was a necessary witness regarding the nature of the relationship DeMoisey shared with Louanne and the level of financial support DeMoisey provided Louanne, which was integral to the maintenance modification issue. Louanne and DeMoisey admitted they were in a relationship but insisted they were not cohabitating. In a December 2017 order, while the circuit court did not direct disqualification, the circuit court suggested that it would be prudent for DeMoisey to "stay clear of the case." At that point, Breitenstein, an independent contractor with DeMoisey Law Office, PLLC, agreed to take on the case and continued to handle the case through its conclusion.

KRS 403.220 provides that in any proceeding under Chapter 403, the marriage dissolution and child custody chapter, a circuit court can award attorney's fees. That statute states that

> [t]he court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment. The court may order that the amount be paid directly to the attorney, who may enforce the order in his name.

Louanne requested that the circuit court order Charles to pay $20,215 for DeMoisey's services, $76,725.00 for Breitenstein's services, and costs in the amount of $7,257.10 for a total request of $104,197.10. The circuit court recognized that the DeMoisey Law Office agreed to represent Louanne for $1, or essentially pro bono. The circuit court considered the disparity in income between Louanne and Charles, and that Louanne would not have been able to litigate these matters if Breitenstein had not agreed to represent her pro bono. Additionally the circuit court relied on CR 37.01(d), which states that if a court grants a motion to compel discovery, "the court shall, after opportunity for hearing, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees . . . ." As such, the circuit court ordered that Charles pay half of Breitenstein's fee, plus costs. The circuit court did not order Charles to pay for any of DeMoisey's work because the court urged DeMoisey to

distance himself from the litigation. Therefore, the circuit court awarded $45,619.60 to Breitenstein.

When reviewing a request for attorney's fees pursuant to KRS 403.220, a circuit court must consider the parties' financial resources and may order one party to pay a reasonable amount of the other party's attorney's fees. *Smith,* 556 S.W.3d at 556. A circuit court's award of attorney's fees is reviewed for abuse of discretion. *Sexton v. Sexton,* 125 S.W.3d 258, 272 (Ky. 2004). A circuit court abuses its discretion if its decision was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *English,* 993 S.W.2d at 945.

> The amount of an award of attorney's fees is committed to the sound discretion of the trial court with good reason. That court is in the best position to observe conduct and tactics which waste the court's and attorneys' time and must be given wide latitude to sanction or discourage such conduct.

*Gentry v. Gentry,* 798 S.W.2d 928, 938 (Ky. 1990).

Here, the circuit court properly considered the parties' financial resources and incomes, among other factors, and awarded attorney's fees accordingly. The circuit court cut the requested fee in half and did not order Charles to pay any of DeMoisey's outstanding fees. This is notable, particularly considering the circuit court's recognition that a "great deal of Mr. Breitenstein's work was created by [Charles's] discovery noncompliance." "[A]n allocation of court costs and an award of an attorney's fee are entirely within the discretion of the court." *Neidlinger,* 52 S.W.3d at 519 (quotation omitted). As such, we conclude that the attorney's fee award was not unreasonable or

24

unfair and thus the circuit court did not abuse its discretion in ordering Charles to pay attorney's fees.

## CONCLUSION

Accordingly, we reverse the Court of Appeals and reinstate the circuit court's judgment.

Vanmeter, C.J.; Bisig, Conley, Keller, Lambert, and Nickell, JJ., sitting. All concur. Thompson, J., not sitting.

COUNSEL FOR APPELLANT/CROSS-APPELLEE:

Allison Spencer Russell
Simms Russell Law, PLLC


COUNSEL FOR APPELLEE/CROSS-APPELLANT:

J. Fox Demoisey
Demoisey Law Office, PLLC